Thomson, J.,
delivered the opinion of the court.
On the 15th day of September, 1891, A. P. Campbell, by a written instrument of that date, sold and transferred ;to Joseph P. Schlink the houses, wharfs, fixtures and personal property within the inelosure of The Berkeley Amusement and Land Company’s grounds at Berkeley Lake, together with a lease of the grounds previously given by The Denver Land & Security Company to John Elitch, and to the ownership of which Campbell had succeeded. Among the buildings transferred was a building in the shape of an octagon, which constitutes part of the matter in controversy in this case. Schlink had beeu in possession of the property since the preceding spring, under what arrangement does not appear, but it does appear that he received his possession from Campbell. On the 1st day of April, 1890, The Continental Land & Security Company, successors to The Denver Land & Security Company, executed a lease to James G. Tesch of an irregular ti'iangular shaped piece of ground, bounded by a row of trees, and described by metes and bounds, adjoining the ground which Schlink received from Campbell. On the 5th day of November, 1891, an assignment from Tesch to William H. Smith was indorsed on the back of the lease. The assignment is limited in its terms, and does-not state very clearly what it was intended to transfer, but it seems to be conceded that it gave the assignee the right to occupy the triangular piece of ground. Tesch was in possession of these premises at the time Schlink took possession of the ground and property transferred to him, and remained in posses-, sion until he made the assignment to Smith. At the time of Schlink’s entry there was a fence between the ground of which he took possession and that occupied by Tesch. The fence followed a row of trees. Schlink’s possession extended to the fence, and included the octagonal building of which *230 we have spoken. His right of possession was never questioned by Teseh. Sometime in the fall or winter of 1891, during the temporary absence of Sehlink, and without his knowledge or consent, Smith moved the fence over upon the ground of which Sehlink was possessed, taking possession of a strip of an average width of about fifteen feet. The octagonal building was upon the strip which Smith thus transferred to himself, and was afterwards occupied and used by him as a tool house. This action was brought by Sehlink to recover damages for the taking of the land and house. It was instituted before a justice of the peace, and went by appeal to the county court, where a trial resulted in a judgment for plaintiff of $197.50.
There was evidence introduced bjr the plaintiff tending to show that, according to a survey which he had caused to be made, the fence, as it originally stood, was upon the true line between himself and the defendant; and it is argued in defendant’s behalf that, therefore, the boundaries of land were in dispute, so that the justice had no jurisdiction to hear the cause; and, it having come to the county court by appeal from the justice, that court was equally without jurisdiction. By the tenns of the statute, if, in any action before a justice o’f the peace relating to real estate, it shall appear that the title or boundaries are in dispute, it becomes his duty to certify the cause and transmit the papers to the district court of the same county. But there was no question of controverted boundaries in this case within the meaning of the law. The location of the line between the grounds of which the parties respectively were in possession was not in dispute. There was no conflict in the evidence upon that point. It conclusively appeared that when the plaintiff went into possession the two tracts were divided by a fence, and that the plaintiff’s possession extended to the fence. The defendant, until he removed the fence, had never been in possession of any part of the ground within the plaintiff’s inclosure, nor had the defendant’s grantor ever been in such possession. The survey made to show that the true line was where the fence had *231 stood was unnecessarjq and the evidence concerning it was immaterial. The plaintiff’s right of action grows out of the invasion of a possession which he actually had, and whose boundary, as between himself and the defendant, was the fence. When the defendant removed the fence, he committed a trespass. If he thought he had a rightful claim to the ground which he took, the courts were open for the adjudication of his title; but no title, or claim of title, is a justification of his forcible assumption of possession.
Objection is made to some of the instructions. In so far as they are based on unnecessary evidence, or require a finding upon facts concerning which there was no dispute, they are objectionable, but it is not from the defendant that the objection can come. The court should have instructed the jury that upon the evidence the plaintiff was entitled to a verdict, submitting to them only the question of its amount. By involving that in uncertainty which should have been made certain, the plaintiff’s case was imperiled, but the defendant was not hurt. The instructions are not otherwise open to objection.
Rulings of the court upon the admission of evidence are also called in question. Immaterial evidence was admitted for the plaintiff over the defendant’s objection, whose only tendency could be to throw confusion into the plaintiff’s case, and in so far benefit the defendant. The rulings were erroneous, but they cannot be questioned by him. Testimony of witnesses as to the value of the house, and as to other facts showing the amount of damage sustained, was objected to in the trial court for incompetency. Whatever else may be said concerning it, it was not incompetent. The grounds of objection taken at the trial are the only ones that can be noticed here.
We find nothing in the record to demand a reversal of the judgment, and it will therefore be affirmed.

Affirmed.