[No. 9450.   Department One.   June 9, 1911.]

ALBERT ROSENBAUM *et al.*, *Respondents*, v. THOMAS EVANS *et al.*, *Appellants*.[1]

REFORMATION OF INSTRUMENTS—COMPLAINT — SUFFICIENCY — MUTUAL MISTAKE.   A complaint for the reformation of a deed sufficiently shows a "mutual" mistake, where it alleges a mistake either of the scrivener or of the plaintiffs, whereby the southeast quarter was conveyed, when the grantors and grantees both intended the southwest quarter.

VENUE—TRANSITORY ACTION — REFORMATION OF DEED — COURTS— JURISDICTION.   An action to reform a deed is transitory, the courts of this state having jurisdiction over the person of the defendant, although the deed was of land in another state.

[1]Reported in 115 Pac. 1054.

REFORMATION OF INSTRUMENTS—DEFENSES—ESTOPPEL. Failure to read a deed does not estop the grantors from maintaining an action to reform it to correct a mistake in the description.

REFORMATION OF INSTRUMENTS — MUTUAL MISTAKE — EVIDENCE—SUFFICIENCY. A mutual mistake, warranting the reformation of a deed, is established, within the rule requiring clear and convincing evidence, where the deed called for the southeast quarter, and was not read by the grantors, who intended to convey the southwest quarter, and it appears that the agreement was for an unimproved quarter, that the southeast quarter was improved and worth twice as much as the southwest quarter, that the grantors had declined to convey the northeast quarter, which was of less value than the southeast, and testified that they had given the grantees the choice of the two west quarters, which were of equal value and unimproved, the grantees admitting that they were to have unimproved land, but testifying that they were given the choice of the two south quarters, and that they were surprised to find improvements on the land described in the deed.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered December 6, 1910, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action to reform a deed. Affirmed.

*Geo. D. Emery* (*W. D. Covington,* of counsel), for appellants.

*H. A. P. Myers* and *Walter L. Johnstone,* for respondents.

GOSE, J.—This is an action to reform a deed. There was a decree for the plaintiffs. The defendants have appealed.

In the month of April, 1910, the respondents were the owners of section 9 and the southeast quarter of section 11, in township 132, north, of range 103, west of the Fifth Principal Meridian, in Bowman county, in the state of North Dakota. At the same time the appellants owned a tract of unplatted land outside the limits of the city of Seattle, in King county, containing about two and one-half acres. On the 4th day of April, 1910, the respondents executed and delivered to appellants a deed embracing the southeast quarter of section 9 and forty acres in section 11 of the land situated

in North Dakota. In exchange for this conveyance, the appellants executed and delivered to the respondents a deed to the unplatted land. The respondents paid to the appellants $207, and assumed a mortgage upon the unplatted land of $1,500, principal, and $97, interest, the agreed difference in value between the properties exchanged. The respondents contend that there was a mutual mistake in their deed to appellants, whereby they conveyed to them the *southeast* quarter of section 9 instead of the *southwest* quarter. The allegation in the complaint is:

"That by mistake either of the scrivener who wrote the deed, or of the plaintiffs, the deed of the plaintiffs which was delivered to defendants about April 1st, 1910, described the land in said section nine (9), as the southeast quarter (SE¼), when in truth and in fact it should have described it as the southwest quarter (SW¼) of said section nine (9), as the same was intended by both grantors and grantees therein, and the defendants received said deed without calling attention to said mistake."

The appellants demurred to the complaint, on the ground that it does not state facts sufficient to constitute a cause of action.

The first objection urged against the sufficiency of the complaint is that there is no allegation that the mistake was mutual. While the word "mutual" is not used, the substance of the allegation is that the respondents intended to convey, and the appellants intended to receive, the southwest quarter of section 9, instead of the southeast quarter as described in the deed. This, we think, is a sufficient allegation of a mutual mistake.

It is next insisted that the action is one affecting the title to real property, and that the court was without jurisdiction. This contention, we think, is also without merit. All the parties were residents of King county at the time of the commencement and trial of the case. In *Wood v. Mastick*, 2 Wash. Ter. 64, 3 Pac. 612, and *Morgan v. Bell*, 3 Wash. 554, 28 Pac. 925, 16 L. R. A. 614, this court held that a

suit for the specific performance of a contract to convey real estate is a transitory one. In discussing the precise question in the *Morgan* case, the court said that a decree of specific performance affects the parties to the action personally, but does not determine the title in the sense the word is used in our statute. In *State ex rel. Scougale v. Superior Court*, 55 Wash. 328, 104 Pac. 607, 133 Am. St. 1030, we held that an action to establish and enforce a trust in real property operates upon the party personally, and is transitory in its nature. A like view is announced in *Sheppard v. Coeur d'Alene Lum. Co.*, 62 Wash. 12, 112 Pac. 932. In *McGee v. Sweeney*, 84 Cal. 100, 23 Pac. 1117, it was sought to have a deed to certain property in the state of Pennsylvania declared void and to have a reconveyance. To the plea of jurisdiction, the court said:

"It is well settled, however, that a court of equity has power to compel a reconveyance of property outside of its jurisdiction, by reason of its control over the parties before it."

In *Hayes v. O'Brien*, 149 Ill. 403, 37 N. E. 73, 23 L. R. A. 555, the action was commenced in Cook county to set aside a conveyance of real estate on the ground of fraud, and for specific performance of a contract to convey land in Lake county. It was held that jurisdiction of the parties invests the court with power to proceed to final decree, in all that class of cases where it is sought to compel "the execution and cancellation" of deeds to land. It was said that, when the relief sought does not require the court to deal directly with "the estate itself," the proceeding does not affect real estate within the meaning of the statute. The same view is announced in: *Johnston v. Wadsworth*, 24 Ore. 494, 34 Pac. 13; *Johnson v. Gibson*, 116 Ill. 294, 6 N. E. 205; *Massie v. Watts*, 6 Cranch, 148, 159; *Gilliland v. Inabnit*, 92 Iowa 46, 60 N. W. 211; *Pillow v. King*, 55 Ark. 633, 18 S. W. 764; *Frank v. Peyton*, 82 Ky. 150; *Brown v. Desmond*, 100 Mass. 267; *Lehmberg v. Biberstein*, 51 Tex. 457; *McQuerry v.*

*Gilliland,* 89 Ky. 434, 12 S. W. 1037, 7 L. R. A. (N. S.) 454.

In *Pillow v. King,* the court said:

"In the case of *Massie v. Watts,* 6 Cranch, 160, Chief Justice Marshall says: 'In a case of fraud, or trust, or of contract, the jurisdiction of the court of chancery is sustainable wherever the person be found, although lands not within the jurisdiction of that court may be affected by the decree.' And in a very recent case Chief Justice Fuller said: 'The real estate was situated in Tennessee, and governed by the law of its *situs;* and while, by means of its power over the person of a party, a court of equity may in a proper case compel him to act in relation to property not within its jurisdiction, its decree does not act directly upon the property, nor affect the title, but is made effectual through the coercion of the defendant; as, for instance, by directing a deed to be executed or canceled by or on behalf of the party.' *Carpenter v. Strange,* 141 U. S. 105."

In *Frank v. Peyton* the action was commenced in Kentucky, where all the parties resided, to compel the vendor of real estate situated in Illinois to execute a deed acknowledged according to the laws of the latter state. The vendor had theretofore executed a deed with a defective acknowledgment. The lower court sustained a demurrer to the jurisdiction. In treating the question on appeal, it was held that the proceeding acts upon the person, "and the fact that property in another jurisdiction may be affected by it is no objection to the relief." The appellants have referred to *Seymour v. LaFurgey,* 47 Wash. 450, 92 Pac. 267, in support of their contention. That was an action to terminate a contract for the purchase and removal of standing timber. The court held that logging contracts of that character affect the title to land upon which the timber is growing, inasmuch as they contemplate that the purchaser shall take possession of the land and use it while cutting and removing the timber. *McLeod v. Ellis,* 2 Wash. 117, 26 Pac. 76, also cited by the appellants, has no application to the facts in this case.

It is urged that, in the absence of fraud, one who signs a

written instrument, without reading it or acquainting him-
self with its contents, is estopped by his own negligence from
maintaining a suit for its reformation. The respondents
both testified that they did not read the deed before signing.
We do not think the authorities cited by appellants to sus-
tain this contention are applicable to the facts before us.
They, no doubt, announce the correct rule as applied to cer-
tain kinds of contracts. We cannot think that the mere fail-
ure of either party to a deed to read it operates as a bar
to an action for its reformation, based upon error in the
description. Mistakes in the description of real property,
where it is described by government subdivisions, are easily
made. The respondents in good faith believed that they fur-
nished the scrivener with the correct description, and relied
upon him to write it in the deed. The rule contended for
would be harsh and inequitable if applied here. The rules
governing cases of equitable cognizance must be applied with
more or less flexibility as the equities of the particular case
warrant. *Lewis v. Wellard,* 62 Wash. 590, 114 Pac. 455.

To warrant a decree of reformation of a written instrument,
there must be clear and convincing evidence of a mutual mis-
take. *Norton v. Gross,* 52 Wash. 341, 100 Pac. 734; *John-
son v. Conner,* 48 Wash. 431, 93 Pac. 914. The appellants
insist that, if there was a mistake in the instant case, it was
a mistake on the part of the respondents only, and that the
evidence does not warrant the decree. The decree has abundant
support in the record. The essential facts shown are that
the respondents, prior to the execution of the deed in contro-
versy, had made a tentative arrangement with the appellants
for the exchange of the northeast quarter of section 9 and
the forty acres in section 11, for their property. The re-
spondents discovered that a road took a strip off appellants'
property to the extent of about one-fourth of an acre, and
declined to consummate the deal. A little later the respond-
ents offered the appellants the forty-acre tract in section
11 and their choice of the west quarters of section 9 for their

property, paying the difference as heretofore stated. One Mulvihill, a real estate agent, acted as an intermediary between the parties. The respondents gave him a sectional map with the west quarters plainly marked in pencil, which he exhibited to the appellant husband and then returned to the respondents. The plat is in the record. The appellant husband denies that he saw the plat, but Mulvihill says he showed it to him. The respondents testified that the appellant, after seeing the plat, selected the southwest quarter of section 9. The appellant says that he was offered the choice of the two south quarters, and that he selected the one described in the deed.

The court found, and the evidence shows, that the southwest quarter of section 9 is worth $1,600, and that the southeast quarter is worth $3,200. The west quarters were of equal value. The southeast quarter is more valuable than the northeast quarter, which the respondents declined to exchange after discovering the shortage in the appellant's property. The southeast quarter was improved in crop and had a granary upon it. The appellant admits that he did not expect to get improved property, but that he was to have prairie land. The west quarters are unbroken prairie. The stenographer, who made a copy of the abstract of title to section 9 at the request of the respondents, wrote upon the caption and the cover the words: "Abstract of Title to the Southwest Quarter of Section 9." She testified as the appellants' witness that, when the respondents and the appellants came for the abstract, she called the appellants' attention to the indorsement on the cover, and that "they both looked at it." This occurred three or four days after the delivery of the deed. It is patent that the respondents did not offer the appellants the choice of the two south quarters when one was double the value of the other; and moreover, as we have seen, the offer embraced the choice of two unimproved quarters. The appellant husband knew, when he found the quarter improved and in crop, that the deed invested him

with the legal title to property which was not rightfully his. He testified that he was "very much surprised" in finding it fenced.

It is urged that the record discloses such a discrepancy in the value of the King county property and the property embraced in the decree as to make the decree oppressive. The trial court refused to make any finding as to the value of the King county property, although requested to do so. The parties had the right to exchange properties if they desired, and we will not make a new contract for them. Giving to the findings of the trial court the weight they deserve, they are supported by the record.

The decree is affirmed.

DUNBAR, C. J., PARKER, and MOUNT, JJ., concur.