# LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY COMPANY ET AL. *v.* CLOUGH ET AL.

[No. 21,942. Filed April 21, 1914. Rehearing denied July 3, 1914.]

1. DRAINS.—*Proceedings to Establish.—Petition.—Sufficiency.*—No exact certainty is required in a petition for the construction of a drain, but it is sufficient if it contains the allegations required by statute, and, since the drainage statutes must be liberally construed to effect the ends sought, such a petition was not subject to demurrer on the ground that not all the land affected was described in 40-acre tracts as required by statute. p. 183.

2. DRAINS.—*Proceedings to Establish.—Jurisdiction.*—Under §1438 Burns 1914, §1318 R. S. 1881, providing that where the subject-matter of any suit is situated in two or more counties the court which first takes jurisdiction shall retain the same, as well as under §6141 Burns 1914, Acts 1907 p. 508, providing that when a proposed drain will run into two or more counties, the circuit or superior court of the county having the greatest length of the proposed work shall have jurisdiction thereof, where the petition for a drainage construction showed the greater length of the proposed drain to be in the county in the circuit court in which the petition was filed, such court had jurisdiction and was not deprived thereof by the fact that the report of the commissioners to whom such petition was referred provided for the greater length of the drain in an adjoining county. pp. 184, 187.

3. DRAINS.—*Proceedings to Establish.—Diversion of Interstate Stream.*—Remonstrators in a drainage proceeding can not object to the action of the court establishing the drain, on the ground that the court was without authority because the proposed drain would divert an interstate watercourse, where it does not appear that rights peculiar to them would be affected by such diversion. p. 185.

4. DRAINS.—*Establishment.—Eminent Domain.—Police Power.*—The construction of drains, and the taking of property for such

purposes, is an exercise of the police power of the State, and not within the power of eminent domain, hence railroad companies are not entitled to compensation for the cost of erecting and maintaining bridges made necessary by the construction of a public drain across their rights of way under §6140 *et seq.* Burns 1914, Acts 1907 p. 508.   p. 185.   .

5. DRAINS.—*Proceedings to Establish.—Jurisdiction.*—Under §6140 Burns 1914, Acts 1907 p. 508, where a proposed drain affects lands in two or more counties, the petition must be filed in the county having the greater length thereof, even though the lands of the petitioners affected thereby are not located in such county. p. 187.

From Porter Circuit Court; *Henry A. Steis,* Special Judge.

Drainage proceedings on the petition of Susan Clough and others, and from a judgment establishing the drain the Lake Shore and Michigan Southern Railway Company and others appeal. *Affirmed.*

*John B. Peterson, A. C. Harris* and *John A. Gavit,* for appellants.

*John H. Gillett, Randall W. Burns* and *Frank B. Pattee,* for appellees.

ERWIN, J.—This is a proceeding brought by appellees, by petition filed in the circuit court of Porter County, in which it is sought to change the course of the Little Calumet River, and make a cut-off from the line of said river, as it now runs, so as to run in a northerly direction into Lake Michigan, across a high ridge of land, on which are situated appellants' rights of way, and make a drain in some places 200 feet wide at the top and more than thirty feet deep.   To this petition a demurrer was filed by each of the appellants, on the grounds:   (1) that the same does not state facts sufficient to constitute a sufficient petition in the drainage proceeding;   (2) that all the lands to be affected are not described in forty-acre tracts;   (3) that all the lands to be affected are not described in said petition.   The demurrers were overruled and exceptions saved.   Subsequently the

petition was referred to the drainage commissioners of Porter County, and A. P. Milton of Lake County. At the March term following, the commissioners made and filed their report.

In the report of the commissioners, they establish, in addition to the drain prayed for in the petition, certain arms, or lateral drains, one the Salt Creek arm, and the other the Gary arm. After the report was filed, each of the appellees filed remonstrances. At the October term of 1909, the cause came on for trial, when it was discovered that by including the "Gary Arm" it would make the greater length of the drain, in Lake County; whereupon, the appellants and each of them moved the court to dismiss the petition on the grounds that the jurisdiction of the drain was in Lake County and the Porter Circuit Court had no jurisdiction. The court, pending the motion to dismiss, and on motion of petitioners, permitted the commissioners to make such amendments to their report as would exclude the "Gary Arm" and thus leave the greater portion of the ditch in Porter County, and directed the commissioners to make reports at the following December term of the court, to which ruling appellants each reserved an exception. At the December term the commissioners, pursuant to the order of the court, made a report in which the proposed drain was left at 22,300 feet in Lake County and 29,650 feet in Porter County.

In this second report damages were awarded to the appellants, as follows: To the Chicago, Indiana and Southern Railway Company $17,000; to the Lake Shore and Michigan Southern Railway Company $35,000. To this report the several appellants filed remonstrances, each setting forth substantially the same grounds, being those provided in §4 of the drainage act of 1907, and in addition to the several causes of remonstrance, they set forth the proceeding and order of the court in referring the report back to the commissioners for correction. The ninth cause of remonstrance of the Chicago, Indiana and Southern Railway Company

set forth that the construction of the ditch across its railroad 70 feet wide at the bottom and 30 feet deep would require this appellant to bridge the same at a cost of $131,000. The eighth cause of remonstrance of the Michigan Central Railroad Company set forth that the construction of the ditch under its bridge would require the same to be taken down and new abutments constructed, which would cost the sum of $63,700. The eighth cause of remonstrance of the Lake Shore and Michigan Southern Railway Company set out that the ditch proposed across its tracks would be 70 feet wide at the bottom, 34 feet deep and 210 feet wide at the top; that it would be required to construct a double-tracked bridge thereover at a cost of $150,000. The prayer of each remonstrator was that the proceedings be dismissed; and if not, then that the remonstrators be allowed damages, incident to and necessary in the matter of the bridges as aforesaid.

A trial was had, and upon timely request by appellants the court made special findings of facts and stated its conclusions of law thereon. The decree established the work and provided for its construction. At the same time the court struck from the commissioners' report the several allowances of damages consequent upon the construction of the work and rendered judgment against each appellant.

The court found the facts to be that the Calumet River would, by said proposed work, be changed from its present course so as to run northerly into Lake Michigan; that between the river and Lake Michigan there is a ridge of sandy land, averaging about thirty feet above the level of the lake and about ten feet above the river valley; that the said ridge is a little more than a mile wide; that the total area to be drained by the proposed ditch will be 350 square miles; that the petitioners are the owners of lands which they desire to drain; that the lands lie outside the corporate limits of any city or town; that the same cannot be drained without affecting the lands of others; that each tract will

be benefited by the proposed drain.   Then follows a descrip-
tion of the proposed drain by courses and distances, and of
each arm, with the length of the drain in each county
through which it runs; that many years ago the Lake Shore
and Michigan Southern Railway Company had constructed
along said ridge between the river and the lake a double-
track railroad and are still operating said road; that the
Chicago, Indiana and Southern Railway Company also owns
and maintains a single-track line of road upon said ridge
parallel with the Lake Shore road; that the cost of con-
struction of said drain is $314,398.98; and that the benefits
are $335,264.69; that the proposed work will improve public
highways, benefit the public health, and will be of public
utility; that it will be sufficient to properly drain the lands
affected; that the Chicago, Indiana and Southern Railway
Company owns its right of way 100 feet wide; that the pro-
posed drain will cross the rights of way of the appellants
at right angles; that it will be necessary for each of appel-
lants to construct new bridges across the proposed drain;
that a bridge at least 86 feet long will be required by the
appellants; that there is not now and never has been any
ditch, drain or watercourse where the proposed drain crosses
the Lake Shore and Michigan Southern and Michigan Cen-
tral roads; that appellants have no other real estate in said
counties benefited or damaged by said proposed drain.

Upon the foregoing facts the court stated the law to be;
that the appellants should not be charged with benefits for
the right of way; and that said appellants are not entitled
to recover any damages by reason of the construction of the
proposed work; that the work is of public utility and should
be constructed.   To each of the conclusions of law, the ap-
pellants jointly and separately excepted.

The questions presented by the record in this case are:
(1) error in overruling appellants' demurrers; (2) error
in overruling appellants' motion to dismiss the petition;
(3) that the Calumet River being an interstate stream, the

Porter Circuit Court had no jurisdiction over its course; (4) appellants' railways not being within the drainage dis-,trict are not subject to the police power of the State; (5) that the power to cut the ditch across appellants' right of way is referable to the eminent domain power and not the police power; (6) that the drainage act of 1907 (Acts 1907 p. 508, §6140 *et seq.* Burns 1914), is unconstitutional and void in that it allows the assessment of damages to Lake County, for injuries to bridges; to other corporations and persons for injuries to their property, while denying the same to appellants, and is in conflict with the 14th amendment to the Federal Constitution.

It is contended by appellants that the petition is insufficient for the reason that it does not comply with the statutes as to the description of the lands alleged to be 1. affected by the proposed drainage and does not describe the land in forty-acre tracts. While the petition might have been drawn more artistically and certain, yet as the law pertaining to drainage must be liberally construed to effect the ends sought, we are of the opinion that the petition meets all the requirements of the statutes and is sufficient to withstand a demurrer. §6148 Burns 1914, Acts 1907 p. 508; *Stevens* v. *Templeton* (1908), 170 Ind. 248, 251, 84 N. E. 148; *Righter* v. *Keaton* (1908), 170 Ind. 461, 466, 84 N. E. 977; *Osborn* v. *Maxinkuckee, etc., Co.* (1900), 154 Ind. 101, 106, 56 N. E. 33; *Rodgers* v. *Vorhees* (1890), 124 Ind. 469, 24 N. E. 374; *Heick* v. *Voight* (1887), 110 Ind. 279, 282, 11 N. E. 306. No exact certainty is required in this form of pleading in a ditch proceeding. If it contains the allegation required by the statute it will be deemed sufficient. §6141 Burns 1914, Acts 1907 p. 508; *Shields* v. *McMahan* (1885), 101 Ind. 591; *Heick* v. *Voight, supra.*

The second proposition presented is based upon the trial court's refusal to dismiss the petition on the grounds that the report of the commissioners to whom the matter had

2. been referred, showed that they had, in laying out the drain, provided for certain arms to the drain, as described in the petition as originally filed; thus making the greater length of the drain, including laterals, in Lake County, and that by so doing the Porter Circuit Court had been ousted of its jurisdiction. It is not contended but that the Porter Circuit Court had jurisdiction in drainage proceedings, nor do appellants contend that anything in the petition, as originally filed, deprives the Porter Circuit Court of jurisdiction, in this particular matter. Where the subject-matter of any suit is situated in two or more counties the court which first takes jurisdiction shall retain the same. §1438 Burns 1914, §1318 R. S. 1881; *Hart* v. *Scott* (1907), 168 Ind. 530, 81 N. E. 481. There is reason for the rule in this kind of a proceeding. The petition filed in this case showed the greater length of the proposed drain in Porter County, and gave that court jurisdiction to act, which it did in appointing the commissioners. These commissioners in addition to the drain as described in the petition, added thereto certain other lateral drains, which made the greater length in Lake County. Now suppose the petitioners had filed their petition in Lake County and in their petition had included the several arms, but when the commissioners undertook to lay out and establish the drain, they had found that it would be impracticable to include the several proposed arms, and by excluding them, the greater length of the drain, would be in Porter County, then upon appellants' theory, a motion being made to dismiss, the cause had been dismissed and transferred to Porter County and new commissioners had been appointed, who did what the commissioners in this case did, the jurisdiction of the case would be made to depend upon the action of the commissioners, and their judgment as to what should or should not be included in the system of drainage, in the way of lateral drains. The jurisdiction of the subject-matter

of any controversy in any court must be determined in the first instance by the petition or complaint, and where once rightfully acquired cannot be taken away, by the bare fact that the commissioners added to the drain, as originally prayed for, some additional or lateral drains, this would not oust the jurisdiction of the court as to the drain mentioned in the petition, and would be no grounds for dismissing the whole proceedings. The court trying this case permitted the amendment of the report of the commissioners, so as to cut off a part of the arms of the drain in Lake County, and as finally tried and disposed of, as shown by the finding of facts, had its greater length in Porter County.

It is next contended by appellants that the Porter Circuit Court had no authority to divert the course of the Calumet River, as the same was an interstate stream. In all 3. the cases cited by appellants on this proposition some questions of interstate rights were involved, or at least an individual right presented by some party affected. We do not understand that remonstrators are permitted to complain of any action of the court in any matter which does not interfere with their own rights, or in any way affect them. Unless the party is aggrieved by the judgment of the court he has no standing in his appeal, however much it may affect others. *McFarland* v. *Pierce* (1897), 151 Ind. 546, 548, 45 N. E. 701, 47 N. E. 1; *Marshall* v. *Matson* (1908), 171 Ind. 238, 86 N. E. 339.

It is further contended by appellants that as the line of their easements are not within the proposed drainage district, they are not subject to the police power of the 4. State, but the matter is referable to the eminent domain power, and that appellants are entitled to damages for the construction of bridges occasioned by the drain. This is not a new question in Indiana. It has been decided by this court that the construction of drains and highways and the taking of property for such purposes are within the

police power of the State. *Cincinnati, etc., R. Co.* v. *City of Connersville* (1908), 170 Ind. 316, 83 N. E. 503; *Cincinnati, etc., R. Co.* v. *City of Connersville* (1910), 218 U. S. 336, 31 Sup. Ct. 93, 54 L. Ed. 1060, 20 Ann. Cas. 1206; *Wabash R. Co.* v. *Jackson* (1911), 176 Ind. 487, 96 N. E. 466; *City of Valparaiso* v. *Hagen* (1899), 153 Ind. 337, 54 N. E. 1062, 48 L. R. A. 707, 74 Am. St. 305; *Pittsburgh, etc., R. Co.* v. *Gregg* (1914), 181 Ind. 42, 102 N. E. 961. To the same effect see *Hudson Water Co.* v. *McCarter* (1908), 209 U. S. 349, 28 Sup. Ct. 529, 52 L. Ed. 828, 14 Ann. Cas. 560; *New Orleans Gas Co.* v. *Drainage Com.* (1905), 197 U. S. 453, 25 Sup. Ct. 471, 49 L. Ed. 831; *City of Minneapolis* v. *St. Paul, etc., R. Co.* (1906), 98 Minn. 380, 108 N. W. 261, 120 Am. St. 581, 8 Ann. Cas. 1047, 28 L. R. A. (N. S.) 298; *Chicago, etc., R. Co.* v. *City of Minneapolis* (1914), 232 U. S. 430, 34 Sup. Ct. 400, 58 L. Ed. 671. In the recent cases of *Chicago, etc., R. Co.* v. *Luddington* (1910), 175 Ind. 35, 91 N. E. 939, 93 N. E. 273, and *Wabash R. Co.* v. *Jackson, supra,* the exact question here presented was decided by this court adversely to appellants' contention, holding that the same rule applied to the construction of drains, as that of highways. In each of those cases the authorities on the subject of the right to have damages awarded have been fully collated, and commented upon, and support the judgment in this case. These decisions are in line with *City of Minneapolis* v. *St. Paul, etc., R. Co., supra,* cited with approval by the Supreme Court of the United States in *Chicago, etc., R. Co.* v. *City of Minneapolis, supra.* In the last case cited the question arose whether the railroad company was entitled to compensation for the cost of erecting and maintaining a bridge across a gap in the right of way, made by building a canal connecting two lakes on opposite sides of said right of way, the court holding that it was not entitled to recover and that the taking without compensation was not in violation of the Federal Constitution. It must therefore follow that the

act of March 11, 1907 (Acts 1907 p. 508, §6140 *et seq.* Burns 1914), is not in conflict with the 14th amendment to the Federal Constitution.

What we have heretofore said in this opinion disposes of the questions presented by the motion for a new trial. Judgment affirmed.

## ON PETITION FOR REHEARING.

ERWIN, J.—It is earnestly insisted, by appellants, in their petition for a rehearing that this court erred in holding that the Porter Circuit Court had jurisdiction of the subject-matter of this proceeding, by reason of the provisions of §6141 Burns 1914, Acts 1907 p. 508, which reads as follows: "Whenever any owner or owners of any separate and distinct tract or tracts of land lying outside of the corporate limits of any city or town in this state, * * * shall find it necessary for the successful drainage of any such lands, * * * may apply for such drainage by petition filed in duplicate to the circuit or superior court of the county in which the lands of the petitioner or petitioners are situate". If this were the only provision of the statute as to the jurisdiction of drainage proceedings, the contention of appellants might be sustained, but this same section contains the proviso: "That when any such proposed drain will run into two or more counties, or on the county lines dividing two counties, the circuit or superior court of the county having the greatest length of said proposed ditch shall have jurisdiction of said work". These several provisions of the statute must be construed together.

We are of the opinion that where a proposed drain affects lands in two or more counties, that the petition must be filed in the county having the greater length of the proposed drain, whether the petitioners therefor were the owners of lands in that county or not, if their lands would be affected by the proposed drainage. It is evident that the legislature anticipated just such a condi-

tion as is presented in this case, and to save any question as to jurisdiction, made the later provision to this section.

The Porter Circuit Court had jurisdiction of the petition as presented, even though the petitioners had no lands in Porter County. Petition for rehearing is overruled.

NOTE.—Reported in 104 N. E. 975; 105 N. E. 905. As to the proceedings for the establishment of drains and sewers, see 60 L. R. A. 161. See, also, under (1, 2, 5) 14 Cyc. 1030; (3) 14 Cyc. 1041.