## THREADGILL v. FEDERAL LAND BANK OF HOUSTON et al.

### No. 12257.

Court of Civil Appeals of Texas. Fort Worth.
Jan. 25, 1930.

Rehearing Denied Feb. 22, 1930.

Fitzgerald & Hatchitt, of Wichita Falls, for appellant.

Harris & Martin, of Wichita Falls, for appellees.

BUCK, J.

The facts in this case involve the purchase of a tract of land of some 2,586 acres, in Hartley county, by L. L. Amason. Loans had been made on the tract by the Federal Land Bank of Houston and by the American Life Insurance Company, and probably by the Wichita State Bank. N. W. Threadgill, of Henrietta, Clay county, Tex., bought all of the tract, except 200 acres retained by Amason. During the latter part of the year 1925, Threadgill proposed to sell to R. L. Riner, the latter of Wichita Falls, all of the tract theretofore purchased by Threadgill. Threadgill offered to sell the tract for $14.50 an acre, or for a total of $36,952.34, all cash. Both of the parties went to Channing to talk with a Mr. Collins, agent for the Federal Land Bank, about getting a release from the Federal Land Bank, upon the completion of the sale to Riner. Collins told them to go ahead with the deal, and to take up that part of the loan made on the tract owned by Threadgill, and to have Mr. Amason make an application for another loan on the 200 acres retained by him. That when such second loan was perfected, and the loan on the tract involved in this deal was paid, the Federal Land Bank would release the loan so paid. The bank had an abstract of title to the whole tract, and Collins told Riner that Threadgill could borrow the abstract for examination. Threadgill did get the abstract from the Federal Land Bank, and put up as a pledge $208 for the safe return of the abstract after the deal was made. The deal was completed and Riner went into possession of the land, and he, probably acting for Threadgill, paid off the incumbrances owing to the Federal Land Bank and to the Insurance Company, and probably any indebtedness due the Wichita State Bank. A controversy arose between

Threadgill and Riner as to the latter's right to keep the abstract which Threadgill had theretofore secured from the Federal Land Bank.

In the contract of sale between Threadgill and Riner, Threadgill obligated himself to convey to Riner said land by a "good and sufficient warranty deed, and in consideration of the sum of $37,502.80," and to furnish said abstract showing "a good and marketable title" in Threadgill. He further agreed "to secure at the earliest practical date, not exceeding fifteen days from and after this day, a complete, certified abstract of title covering the above described land, said abstract of title to show a good and marketable title to the party of the first part to said land, same to be free and clear of liens, including the taxes for the year 1925, and submit same to the party of the second part for examination; and the party of the second part shall have ten days from and after the date said abstract of title is submitted to him in which to have same examined by his attorney, and if any objections are found," etc.

Thus it will be seen that in the contract of sale, according to the strict wording of the same, Threadgill agreed only to furnish Riner an abstract of title for examination. But Riner claimed that under the custom prevailing in Texas, and especially in the part of the state where the deal was made, where one agreed to convey a tract of land for cash, and where the grantor agreed to convey a good and marketable title, and especially where there was a loan on the land which had to be released, that the grantor's duty was to furnish to the grantee an abstract of title free of charge. The controversy between Threadgill and Riner continued until August 15, 1927. Threadgill had written to the Federal Land Bank for the return of the money deposited with it, but the bank insisted that Threadgill would have to return the abstract before he would be entitled to the return of the money. Riner refused to surrender the abstract. Finally Riner had an abstract made, at a cost of $84.75, covering the 200 acres still retained by Amason, and on which the Federal Land Bank had made another loan. Finally the Federal Land Bank filed suit against Threadgill and Riner in the county court of Wichita county, alleging practically the facts heretofore set out. In the petition, plaintiff alleged that in connection with the payment of the pro rata part of a loan due on the land purchased by Riner from Threadgill, it became necessary for Amason to make application for a new loan on the 200 acres still retained by him. That upon request of the plaintiff to Threadgill and Riner to return the abstract theretofore loaned Threadgill, and to secure the return of the $208 deposited with the bank by Threadgill, that a new abstract covering the 200 acres still retained by Amason had been sent by Riner, which was satisfactory to the bank. That the Federal Land Bank had in its hands the sum of $206, which was the amount theretofore deposited by Threadgill, less a fee of $2, which plaintiff alleged to be a reasonable and proper fee and the regular fee charged by plaintiff under like circumstances to cover expenses in connection with the return of the abstract. That said $206 is claimed by Threadgill and by Riner, but the plaintiff does not know the nature of the claim of each of said defendants to said fund except as heretofore set out. That plaintiff stands ready, willing, and able to pay the said amount to whomsoever it is legally due. That defendants have each demanded payment of such sum to himself and have threatened to sue plaintiff to recover the sum, and that the plaintiff believes they will do so. That plaintiff does not know to whom said money is due, and that there is a matter of doubt as to whom the money should be paid. That plaintiff has no interest in said sum except to see that it is paid to the person legally entitled to the same, and to save plaintiffs from vexatious suits. That there is no collusion between plaintiff and any other party to the suit, and that plaintiff is impartial, as between the claimants, being merely a disinterested stakeholder and being willing to abide the judgment of the court as between the claimants. Plaintiff prayed that the defendants be cited and the court determine the ownership of said fund, and that plaintiff be discharged with its costs.

To this plea defendant Threadgill answered, setting up his contention that he was not required under his contract to furnish, except for examination, an abstract of title to the land purchased by Riner. That it was agreed between him and Riner that the abstract of title should be merely furnished him for examination, and after an examination should be returned to Threadgill, in order that he might return the same to the Federal Land Bank and receive the amount of money deposited with that bank for the safe return thereof.

The defendant Riner set up the sale of the land by Threadgill to him, and further pleaded that Riner had agreed to furnish to him a complete certified abstract of title, covering all of the above-described land, same to show a good and marketable title, free and clear of all liens and incumbrances. That Threadgill did furnish such an abstract and that the defendant Riner believed that said abstract of title was the property of and belonged to the defendant Threadgill, and that in compliance with said agreement the contract of sale of said land was consummated and the defendant Riner paid to the defendant Threadgill the full consideration for said land, and that Riner paid, under the orders and direction of defendant Threadgill, the pro rata part of the loan to the Federal Land Bank, but that, after this was done, the bank refused to execute and deliver to the defendant a release of the liens theretofore held by it

on the land. He pleaded that the abstract furnished by Threadgill was the property of and belonged to the defendant Riner. He further pleaded that he had been required, in order to get his release, to have made an abstract of title to the 200 acres retained by Amason, and had sent said abstract to the Federal Land Bank; that it was the duty of Threadgill to return to him said amount so expended, but that he had failed and refused to do so. That the pleader had acted in good faith and as an ordinarily prudent person would have acted under the same or similar circumstances in purchasing and having made said abstracts of title in order that he could obtain a release of the lien held by the plaintiff, and that it was the most economical way to protect said property from foreclosure by the plaintiff, and it was the easiest and most economical way to comply with the agreement that the plaintiff and the defendant Threadgill had with him in regard to the purchase of said land and property. He specially denied that said abstract was furnished and delivered to him for examination only.

The cause was submitted to the court without the intervention of a jury, and Riner moved the court to allow him to open and conclude as to the introduction of testimony and the argument of counsel for the following reasons:~ "Because defendant did not contend that any of the money on deposit in court was deposited by the defendant Riner, but was deposited by the defendant Threadgill, having been deposited with the plaintiff by the defendant Threadgill, but did contend that inasmuch as defendant's cause of action against the defendant Threadgill was in the nature of a suit for the sum of $84.75, that the burden rested upon the defendant Riner to establish his right to recover against the defendant Threadgill for said amount." The court granted the motion, and the defendant Riner, in his cause of action alleged against the defendant Threadgill, opened and closed the evidence and the argument. The court rendered judgment that Riner recover of the defendant Threadgill the sum of $84.75, with interest thereon, together with his costs, and ordered the county clerk of Wichita county to pay to the defendant Threadgill any balance left after the claim of Riner had been satisfied. From this judgment the defendant Threadgill has appealed.

## Opinion.

██ Appellant urges that the trial court was not authorized to consider and to render judgment on the claim of Riner against Threadgill; that said claim was for an amount below the jurisdiction of the county court, and that the defendant Riner should have brought said suit in the justice court, if at all. From what has been said, it is evident that the amount over which the trial court assumed jurisdiction was $206, within the jurisdiction of the county court.

It is evident from plaintiff's pleading that the plaintiff alleged that both the defendants claimed this fund, or an interest therein, and that the plaintiff did not know to whom it should be paid. Riner testified that the reason he had the new abstract of title made and sent to the Federal Land Bank was to get the release of the loan on his land. That the witness and Threadgill went to see Mr. Collins, the agent for the Federal Land Bank, at Channing, and that Collins told them that the way the loan could be released, as to the land conveyed by Threadgill to Riner, was to pay off that part of the loan, and have Amason make an application for a new loan on the 200 acres retained by him. That it never occurred to him, Riner, that Threadgill would not deliver to him an abstract at the time he bought the land. That he did deliver it, but with strings tied to it. That Mr. Amason claimed the abstract. That, when it came to close the deal, Mr. Amason demanded the abstract, contending it was his property, and that, when that contention was made, Mr. Threadgill refused to furnish the witness with an abstract to his land. That Mr. Threadgill assured him forty times that there was nothing to keep the deal from being closed. That it was his purpose in going to Channing to have the deal closed. That at the time he and Threadgill went up to Channing and talked to Collins, that he held the abstract. That there were several of the abstracts, some eight or nine, covering this tract. That Threadgill and Collins did not claim that the abstract belonged to the Federal Land Bank, but that it belonged to Amason.

██ We believe that the trial court had jurisdiction to render the judgment it did. Jurisdiction of a cause once acquired cannot be defeated by defendants pleading a defense which can be enforced only in another forum. Scarborough v. Powell, 2 Willson Civ. Cas. Ct. App. § 734. Under the allegations of plaintiff's petition, both of the defendants were claiming some right or interest in the fund deposited in the county court. The petition must determine whether the amount in controversy is within the court's jurisdiction. Burcum v. Gaston, 196 S. W. 257, by the Amarillo Court of Civil Appeals. Whether the amount in controversy is within the jurisdiction of the county court is to be determined by the amount put in controversy by the plaintiff. Standefer v. Aultman & Taylor Mach. Co., 34 Tex. Civ. App. 160, 78 S. W. 552, by Justice Speer of this court. The test as to the amount in controversy for jurisdictional purposes is the petition. Isbell v. Kenyon-Warner Dredging Co., 113 Tex. 528, 261 S. W. 762, by the Commission of Appeals. One of the leading principles in our law and system of procedure is to avoid a multiplicity of suits, and to settle in one action the respective claims of parties when they are of such nature as to admit of adjustment in

that mode. In permitting a joinder of parties plaintiff, the courts have exercised a sound discretion in determining whether the subject-matter of the suit is properly joined, and whether parties plaintiffs and defendants are properly joined. When two causes of action are connected with each other, or grow out of the same transaction, they may be properly joined, and in such suits all parties against whom the plaintiff asserts a common or alternative liability may be joined as defendants. A court, having acquired jurisdiction for one purpose, has the right to have all questions properly involved litigated in that suit. Zane-Cetti et al. v. City of Fort Worth et al. (Tex. Civ. App.) 21 S.W.(2d) 355. See Morgan v. Davis (Tex. Civ. App.) 292 S. W. 610, 611.

We are of the opinion that the trial court had jurisdiction of the question involved in the petition, to wit, the disposition of the $206 deposited in the court, and that appellee's action against Threadgill for the amount paid by him for the abstract of title was properly allowed to be litigated in this suit.

It is unfortunate that two business men, dealing with large affairs, should allow their differences over such a small matter to lead them to the courthouse, and to put the county and the state and themselves to such a large expense, in comparison with the amount involved, to determine who was right and who was wrong. The expense of maintaining the Court of Civil Appeals amounts to some $97 per day; the expense of maintaining the county court at law is probably at least $60 per day. The fee of each attorney in this case, both of whom are able and high priced lawyers, probably was at least $500. The cost of trial in the court below, and appeal here, would be probably $75. All of this expense has been incurred, not to settle any real or substantial issue between the two parties, but in order that each one may show that he was right and the other man was wrong. It is unfortunate that "the mountain must labor and a mouse issue."

All assignments are overruled, and the judgment is affirmed.