[No. 38974.   En Banc.   September 26, 1968.]

SILVER SURPRIZE, INC., *Appellant,* v. SUNSHINE MINING COMPANY, *Respondent.*[*]

[*]Reported in 445 P.2d 334.

*Witherspoon, Kelley, Davenport & Toole,* by *John L. Neff,* for appellant.

*Keith, Winston & Repsold,* by *Leo J. Driscoll,* for respondent.

NEILL, J.—The plaintiff (appellant), Silver Surprize. Inc., an Idaho corporation, brings this action under an agreement entered into with the defendant (respondent), Sunshine Mining Company, a Washington corporation, seeking damages and other alternative remedies. The defendant's answer and amended answer admitted the contract, and set up six affirmative defenses: (1) extralateral rights, (2) adverse possession, (3) statute of limitations, (4) laches, (5) lack of an indispensable party (Sunshine Consolidated), and (6) failure of the plaintiff to tender back the benefits received under the contract. Defendant then filed an application for a hearing and determination of jurisdictional defenses as provided under CR 12(d). At the conclusion of the argument on the issues of law thus raised, the court dismissed the suit on the ground that the case was essentially local in nature and that it lacked jurisdiction over the subject matter. Plaintiff appeals from this ruling.

The following facts appear from the record. On November 2, 1946, the parties entered into an extensive written agreement involving ownership, exploration and exploitation of certain unpatented mining claims in the Yreka Mining District of Shoshone County, Idaho. The agreement provided that the plaintiff and the defendant would exchange conveyances to certain individually owned claims; so that they would each be the owner of an undivided 50 per cent interest in a group of claims described as the "Surprize Group." This exchange of conveyances was completed, as called for in the contract. The defendant's performance involved certain further obligations, since. it promised to perform exploration and annual assessment work, to initiate patent proceedings and to conduct commercial mining operations upon the claims for the benefit

of both parties. The complaint alleges that the defendant failed to perform the exploration work as promised. Plaintiff also alleges that the defendant has breached the contract in two additional respects: (1) by constructing and using haulage ways under the Surprize Group property in order to explore and exploit other adjacent properties possessed or controlled by the defendant and in which the plaintiff has no interest; and (2) by removing and disposing of ore from the so-called "Yankee Girl" ore body which is located at a depth of several thousand feet below the surface of and within the northerly boundary of the Surprize Group claims. Plaintiff alleges the gross value of the ore taken to be in excess of $5,000,000, and that the defendant violated the contract by withholding plaintiff's agreed share of the proceeds of the ore.

Plaintiff prays for three alternative types of relief: (1) rescission of the contract, and an order requiring the defendant to reconvey and to make restitution for the value of the ore removed by the defendant from the Surprize Group; (2) termination of the contract, an order of reconveyance, and damages for the value of the ore removed; or (3) an accounting, continuing equitable supervision of exploration activities, and other declaratory and injunctive relief.

Defendant's answer and amended answer, the argument on the hearing and determination of jurisdictional defenses, and the briefs and argument on this appeal disclose that the principal defenses to the alleged breach of contract are two. First, the defendant claims extralateral rights in the Yankee Girl vein. The defendant's theory is that the Yankee Girl vein apexes outside the Surprize Group on property owned or claimed by it, or by a third party, Sunshine Consolidated, and that 30 U.S.C. § 26 (1964) accords it extralateral rights to follow the vein into the Surprize Group. Secondly, the defendant asserts ownership by adverse possession of that portion of the Yankee Girl vein which passes into the Surprize Group.

The record is clear that plaintiff's claim is based on (1) a contract; (2) breach thereof; and (3) damages. Defendant's

522

affirmative defenses thereto which are the basis of the court's dismissal are (1) adverse possession and (2) extra-lateral rights. The trial court dismissed the suit on the grounds that the subject matter is, in essence, the determination of title to Idaho real estate.

■ It is not disputed that the proper parties are before this court and that the court has personal jurisdiction over all parties involved. The basic question therefore is: what is the subject matter of this suit? *"The subject matter of a suit, when reference is made to questions of jurisdiction, means the nature of the cause of action, and the relief sought."* 21 C.J.S. *Courts* § 35b (1940). *State ex rel. Washburn v. Hutchins,* 101 Fla. 773, 135 So. 298 (1931); *State ex rel. Cairy v. Iowa Co-operative Ass'n,* 248 Iowa 167, 79 N.W.2d 775 (1956); *King v. Menz,* 75 N.W.2d 516 (N.D. 1956); *In re Edinger's Estate,* 136 N.W.2d 114 (N.D. 1965); *Bailey v. Ancient Egyptian Arabic Order Nobles of Mystic Shrine of N. & S. America,* 162 Pa. Super. 5, 56 A.2d 311 (1948); *Cooper v. Reynolds,* 77 U.S. (10 Wall.) 308 (1870); *Ransome-Crummey Co. v. Martenstein,* 167 Cal. 406, 139 Pac. 1060 (1914); *Lake Shore & M.S. Ry. v. Clough,* 182 Ind. 178, 104 N.E. 975 (1914).

■■ The nature of a claim for relief is determined by the facts alleged in the complaint and as adduced thereunder, and by the relief requested. The facts alleged in the complaint at bar are as set forth above, namely, a contract, breach of the contract, and damages. All of the relief sought by the plaintiff is consistent with a recovery for a breach of contract. The subject matter of plaintiff's complaint is patently a contract action. The United States Supreme Court stated in *United States v. Arredondo,* 31 U.S. (6 Pet.) 691, 709 (1832):

> The power to hear and determine a cause is jurisdiction; it is *"coram judice,"* whenever a case is presented which brings this power into action; *if the petitioner states such a case in this petition, that on a demurrer, the court would render judgment in his favor, it is an undoubted case of jurisdiction;* whether on an answer denying and putting in issue the allegations of the petition, the peti-

tioner makes out his case, is the exercise of jurisdiction conferred by the filing of a petition containing all the requisites and in the manner prescribed by law. (Italics ours.) (Quoted in Brown, Jurisdiction § 2 p. 6 (2d ed. 1901).)

Jurisdiction is not a light bulb which can be turned off or on during the course of the trial. Once a court acquires jurisdiction over an action it retains jurisdiction over that action throughout the proceeding. "Consent cannot confer jurisdiction of subject matter." Brown, Jurisdiction § 3 p. 15 (2d ed. 1901). Neither can the defendant by his answer destroy the jurisdiction of the court once attained. *Adair v. Crepps,* 81 Ohio App. 136, 76 N.E.2d 287 (1947); *Nichol v. Patterson,* 4 Ohio 200 (1829); *Bridgmans v. Wells,* 13 Ohio 43 (1844). *Also see Threadgill v. Federal Land Bank of Houston,* 26 S.W.2d 345 (Texas 1930); and *Scarborough v. Powell,* 2 Tex. Ct. App. Dec. Civ. 644 (1885). If the converse of this were true, it would be within the power of the defendant to preserve or destroy jurisdiction of the court at his own whim. The source of the jurisdiction of the superior courts is the constitution of this state (Const. art. 4, § 6 (amendment 28)) and not the parties defendant to actions. Of course, a plaintiff frequently seeks more than the law permits, but that in itself does not destroy jurisdiction; it merely limits the effective relief the court can properly grant. *Monongahela Power Co. v. Shackelford,* 142 W. Va. 760, 98 S.E.2d 722 (1957). During oral argument, counsel for plaintiff acknowledged such a limitation herein as to certain of its prayers for relief.

Plaintiff commenced this transitory action for breach of contract. The defendant answered the complaint by asserting that it had not breached the contract, and that it owns title to the ore removed. The following questions therefore arise: Can a defendant by his answer change the essence or subject matter of an action? Can a defendant by his answer change a transitory action into a local one? Our research has not found a case in which a court has answered either of these questions in the affirmative. In *Sheppard v. Coeur*

*d'Alene Lumber Co.,* 62 Wash. 12, 112 Pac. 932 (1911), this court answered both of these questions in the negative.

In *Sheppard v. Coeur d'Alene Lumber Co., supra,* the plaintiff commenced an action in Washington state to recover rent for the use and occupation of real estate located in the state of Idaho. The defendant denied that it owed any rent and asserted that it owned the land by right of adverse possession. At the end of the plaintiff's case a nonsuit was entered on the ground that the action was one "affecting the title" to real estate not within the jurisdiction of the' court. The Supreme Court reversed, stating at 14:

We do not think the action affects the title to the property within the meaning of the statute. The purpose of the action is to recover a money judgment for the reasonable rental value of the property. In other words, the action is for the breach of an implied contract. Under the averments of the complaint, the respondents are tenants by sufferance and liable for the reasonable rental value. *The fact that the answer sets up title in the respondent, and brings the title incidentally into issue, does not make the action a local one. It is not sought to obtain a judgment which will in any manner affect title.* That question must be left to the courts of the forum *rei sitae.* If a suit was brought in the courts of this state upon a promissory note, and the answer alleged that the consideration for the note was the sale and conveyance of real property in another county or state, and that there was no title to the property conveyed, a like question would be presented. Obviously such an action would be transitory. This view, we think, is supported by the authorities. *Henwood v. Cheeseman,* 3 Serg. & R. (Pa.) 500; *Menominee River Lumber Co. v. Philbrook,* 78 Wis. 142, 47 N.W. 188; *Hogg v. Mack,* 53 Hun 463; *Nichols v. Voorhis,* 74 N.Y. 28; *Schroeder v. Wittram,* 66 Cal. 636; *Smith v. Schlink,* 6 Colo. App. 228; 12 Ency. Plead. & Prac. 852; 2 Taylor, Landlord & Tenant (8th ed.), 625; *Morgan v. Bell,* 3 Wash. 554, 28 Pac. 925, 16 L.R.A. 614; *State ex rel. Scougale v. Superior Court,* 55 Wash. 328, 104 Pac. 607.

In the *Henwood* case, it was held that the courts of Pennsylvania had jurisdiction of an action of assumpsit for the use and occupation of land lying in the state of New Jersey; that the action was founded on privity of

contract, not privity of estate, and that, *"when the title is incidental the court possessing jurisdiction of the contract which is in its nature transitory, may even inquire into the very title let the lands lie where they may."* The *Menominee* case was an action for the unlawful detention of premises after the expiration of the lease. The action was commenced before a justice of the peace. The defendant pleaded facts showing that it was the owner of the equitable title to the property. It was held that, if the facts stated in the answer were true, the defendant was the equitable owner of the premises, and that the relation of landlord and tenant did not exist between the parties, but that the title to the land was not involved within the meaning of the statute. The *Hogg* case was an action to recover money paid on a written agreement for the purchase of real estate. The complaint alleged that the defendant agreed to convey the premises in fee simple free from all incumbrances, but that owing to certain defects and incumbrances, the defendant could not convey a good and clear title as he had agreed to do. The defense was that the defendant had a good title and was ready to convey it to the plaintiff. The action was not brought in the county where the land was situated, and it was contended that, under the New York statute, which is similar to ours, the action was local. It was held that the real purpose of the suit was to recover a judgment for money, and that the fact that the question of title to real estate may have to be passed upon in a suit does not make it imperative that the case should be tried in the county where the property is situated. The *Schroeder* case arose out of a similar state of facts. It was there held that the jurisdiction of the justice court was not ousted by the fact that the title to the land was incidentally called in question. (Italics ours.)

The view is generally maintained that where the relief sought acts upon the party personally and does not require the court to deal directly with "the estate itself", the proceeding need not be maintained in the state or county where the property is situate. *Rosenbaum v. Evans,* 63 Wash. 506, 115 Pac. 1054 (1911); *Sheppard v. Coeur d'Alene Lumber Co., supra; Lyle Cashion Co. v. McKendrick,* 227 Miss. 894, 87 So.2d 289 (1956); *Hayes v. O'Brien,* 149 Ill. 403, 37 N.E. 73 (1894); *Gilliland v. Inabnit,*

92 Iowa 46, 60 N.W. 211 (1894); *Brown v. Desmond,* 100 Mass. 267 (1868).

█ In *Smith v. Fletcher,* 102 Wash. 218, 220, 173 Pac. 19, 636 (1918), this court said:

It is a universal rule that the courts of one state cannot pass judgment on the title to land in another state. But where the action is aimed at the personal relations of parties in connection with property beyond the jurisdiction, it is well recognized that courts may afford relief.

No one would question that an action brought to try the naked question of title to land must be brought in the state where the land is situate. However, where the basis of the action is transitory and one over which the court has jurisdiction, the court may hear and determine the action even though a question of title to foreign land may be involved, and even though the question of title may constitute the essential point on which the case depends. *Massie v. Watts,* 10 U.S. (6 Cranch) 148, 158 (1810).

Defendant relies on *Olympia Mining & Milling Co. v. Kerns,* 64 Wash. 545, 551, 117 Pac. 260 (1911), to support its position in this case. In that case the plaintiff brought his action solely to get the Washington court to declare it to be the equitable owner of land situate in the state of Idaho. The court said:

Nothing more is involved in this case than the title and possession of the mining claims located in the state of Idaho, to which each party sets up a claim and to which the relations of the parties, or at least one of them, have been changed by force of local proceedings occurring in that state since the execution of the contract upon which appellant relies. No damages are alleged or demanded. No alternative judgment is asked.

The action was not one involving a breach of contract with incidental questions concerning title. The action involved a naked question of title to real estate situate in the state of Idaho.

We would concede that the legal justification for the result reached by the trial court could be the doctrine of forum non conveniens, and, on the basis of that doctrine

that Idaho would be a better forum for deciding this action. However, this court, upon exhaustive review, has within a decade rejected the doctrine of forum non conveniens in a unanimous opinion by Judge Hill (*Lansverk v. Studebaker-Packard Corp.*, 54 Wn.2d 124, 338 P.2d 747 (1959)).

In the oral argument of this appeal, the parties conceded that there is no dispute as to the ownership of the surface lands involved. The principal dispute is as to the physical location of the apex to the vein of ore. The ultimate question, therefore, is not who owns the vein, but rather where the vein is located. Once the superior court makes this finding of fact it will be able to determine the essential question raised by the parties in this case, namely, did the defendant breach the contract.

Accordingly, the determination by the trial court that it lacks jurisdiction of the subject matter of this action is reversed and the case remanded for further proceedings consistent herewith.

FINLEY, C. J., HILL, WEAVER, and HAMILTON, JJ., concur.

HUNTER, J. (dissenting)—I dissent. This state has long adhered to the old common law rule that an action for the purpose of determining title to real property must be brought at the situs of the real property involved. This court said in *Olympia Mining & Milling Co. v. Kerns,* 64 Wash. 545, 117 Pac. 260 (1911) at 550:

[I]t is settled, without conflict of authority, that the courts of one state or country have no authority to divest title to the real estate of an involuntary defendant, situated in a foreign state, or to entertain an action for trespass or ejectment, it being most aptly said in the books that such actions "touch the title" and are purely local in character.

The following authorities are in accord: *Laslie v. Gragg Lbr. Co.*, 184 Ga. 794, 193 S.E. 763, 113 A.L.R. 932 (1937); Restatement of Conflict of Laws, § 614 (1934); Restatement (Second) of Conflict of Laws, § 117i (Tent. Draft No. 4. 1957).

The real property involved in this case has its situs in Shoshone County, Idaho. The majority, however, seeks to distinguish *Olympia Mining* from the instant case, by citing a line of authorities holding in effect that the local situs rule as stated in *Olympia Mining* does not apply where the determination of title to real property in another jurisdiction is incidental to an action in contract. This is not such a case. To the contrary, the primary and determinative question at stake is title to an ore vein, which is realty under the applicable law of the situs state. Idaho Code § 5-203. Although the complaint presents this suit as a contract action, the answer, and the affidavits and arguments of the parties, make it clear that the contract is really an ancillary consideration. In order to grant the principal relief sought by the plaintiff, Silver Surprize, Inc., the court will be required to rule squarely on a question of title to realty. The rights of the parties under the contract depend, in all significant respects, on whether the Yankee Girl vein belongs to the plaintiff or to the defendant. The contract will not support the monetary relief the plaintiff seeks unless the plaintiff first establishes its *title* to the Yankee Girl vein. This suit presents the aspect of an action sounding in trespass, even though the complaint recites a contract.

The trial court correctly recognized that the issue raised is not a dispute as to the construction or operation of a contract. The trial court was not persuaded that the title question could be passed off as merely a factual issue which would have to be decided, along with other factual issues, in the process of trying an action on a contract.

Under the doctrine of extralateral rights as set forth in 30 U.S.C. § 26 (1964), a surface owner may have rights to ore which is actually located beneath the surface boundaries of another person's patent. If a continuous ore vein extends beneath the surface boundaries of two or more claims, federal law prescribes that title to the ore vein resides in the surface owner under whose claim that ore vein apexes. The owner of the vein may follow the vein wherever it goes, irrespective of surface boundaries. In the

instant case, the plaintiff is claiming that the defendant wrongfully removed ore from a location beneath the surface boundaries of the plaintiff's claim. The defendant does not deny the removal, but it does allege that it holds title to the vein from which the ore was removed. This then is the controlling issue in the case. If title is in the defendant, then the plaintiff's chief claim for relief is defeated, regardless of the contract.

The dispositive issue of fact respecting the existence of the defendant's asserted extralateral rights is the location of the apex of the Yankee Girl vein. The defendant asserts that the apex is located beneath its surface boundaries and the plaintiff denies this. The location of the apex of the vein, in this case, directly pertains to title to the vein, in the same way as location of surface boundaries directly pertains to the title to a surface claim. The location of the apex is not merely an isolated fact—it is the central, ultimate fact upon which the existence of the defendant's asserted extralateral rights depends.

When the trial court determined that this suit was in essence a dispute over title to realty, it had no choice but to recognize that subject matter jurisdiction was lacking, under the law of this state. It is seldom that an action nominally on a contract is so tied to an issue of title to realty that the suit must be placed in the local action category. But when this does occur, a court should not hesitate to apply the local action rule. To do otherwise would be to permit the plaintiff, by designating his suit a contract action, to *confer* jurisdiction upon the court.

I am convinced that the trial court correctly analyzed this suit as a local action to determine title to real property situated in another jurisdiction, and that Washington courts lack jurisdiction over the subject matter in this case. Therefore, the trial court's dismissal of the complaint should be affirmed.

ROSELLINI, HALE, and McGOVERN, JJ., concur with HUNTER, J.