[No. 7437.   Decided April 1, 1909.]

Thomas Bowers *et al.*, *Appellants*, v. Charles W. Good *et al.*, *Respondents.*[1]

Appeal—Review—Pleading—Amendments at Trial—Prejudice. Error cannot be predicated upon allowing a trial amendment raising a new issue by an affirmative defense, unless the plaintiff makes a showing of prejudice.

Pleading—Inconsistent Defenses. In an action for breach of contract to convey land, a denial of the contract as alleged and affirmatively setting up an oral contract of sale and its avoidance, is not inconsistent with an earlier general denial.

Compromise and Settlement—Vendor and Purchaser—Mutual Rescission—Surrender of Contract—Fraud — Evidence — Sufficiency. The evidence is sufficient to sustain findings that purchase money returned, with interest and ten dollars additional, was in complete settlement of rights under a rescinded contract of purchase, without fraud, where it appears that the money was received while the parties were dealing at arm's length, and the vendors only stated their views of the vendee's rights under the contract, under circumstances disclosing their motives.

Husband and Wife—Community Property—Contracts by Wife —Authority. A husband cannot object to his wife's want of authority to surrender a contract for the purchase of community property which he permitted her to enter into.

[1]Reported in 100 Pac. 848.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered March 10, 1908, upon findings in favor of the defendants, after a trial before the court without a jury, in an action for damages for the breach of a contract to convey real estate. Affirmed.

*Southard, Brown & Murphy*, for appellants.

*T. N. Tallentire* and *Farrell, Kane & Stratton*, for respondents.

FULLERTON, J.—In 1905 the appellant Elizabeth Bowers and the respondents, acting through their agent, one Julia A. Underwood, entered into an oral contract whereby the appellant agreed to buy, and the respondents agreed to sell, a certain tract of land, situated in King county, for a consideration of $700. At the time of making the contract, Mrs. Bowers paid upon the purchase price the sum of ten dollars. Mrs. Bowers and the agent, who seemed to have made the contract in the absence of third persons, disagree as to its precise terms, but it appears that Mrs. Bowers made small payments on the purchase price from time to time, which aggregated on September 6, 1906, the date on which the last payment was made, the sum of $100. Nothing further was done in the matter until March, 1907, when the respondent Charles W. Good waited upon Mrs. Bowers and told her that he could wait no longer for the balance of the purchase price. This call was made upon Friday, March 1. 1907, and Mrs. Bowers desired him to give her until the next Monday in which to raise the money. This he refused to do, but, as she testifies, did agree to give her until the next day at noon. She further testifies that she appeared at his office on the next day at noon with the money, when Good refused to receive it, declaring that he would not carry out the contract. On March 4 thereafter, all money paid by Mrs. Bowers, and ten dollars additional, was returned to her in settlement of her rights under the contract.

This action was begun by Mrs. Bowers and her husband in May, 1907, to recover damages for the breach of the contract of sale. To a complaint alleging the contract and its breach, the respondents first answered by a general denial; but on the day the case was called for trial, they obtained permission and filed, over the appellants' objection, an amended answer, in which they denied the contract as alleged by the plaintiffs, and set up affirmatively an oral contract of sale, the failure of the plaintiffs to perform, and its subsequent settlement and release. To this a reply was filed, averring that the money returned to Mrs. Bowers, and alleged to be in settlement of the contract between the parties, was so returned without the knowledge or consent of her husband, and against the will of Mrs. Bowers, she being induced to accept the same by false and fraudulent representations made to her by Mr. Good and his agent Mrs. Underwood. On the issues thus made, a trial was had before the court without a jury, resulting in findings and a judgment in favor of the respondents.

It is first assigned that the court erred in permitting the amended answer to be filed on the day the cause was set for trial. It is said that the answer introduced a new issue in the case, one upon which the plaintiffs did not come prepared to try, and that the affirmative matter in the answer was inconsistent with the denials. But we do not think either of the objections are well taken. The statutes permitting amendments to pleadings were enacted in the furtherance of justice, and under them amendments are properly allowed at any stage of the case, when to allow them will not operate to the prejudice of the opposing party. The fact that the amendment may introduce a new issue is not alone grounds for denying it. The true test is found in the answer to the question, is the opposing party prepared to meet the new issue. His remedy, therefore, when a new issue is sought to be presented by an amendment, is not to object to it merely, but to show in addition that he is unprepared to meet the

new issue. In such case, the trial court will, in its discretion, either continue the case in order to allow him to prepare for trial of the new issue, or deny the right to amend. This question was presented in the case of *Daly v. Everett Pulp & Paper Co.*, 31 Wash. 252, 71 Pac. 1014, where the court said:

"This court has heretofore construed the statute as intending much liberality in the matter of amendments in furtherance of justice. In *Barnes v. Packwood*, 10 Wash. 50 (38 Pac. 857), three amended answers had already been filed, and at the time of the trial the court permitted a fourth to be filed. The court observed at page 52 as follows: ' . . . the court having such a large discretion under our law and practice in matters of amendments, we do not think we would be justified in reversing the case for this reason.' The record does not disclose any claim on the part of appellant that he was really injured by the amendment, and unprepared with testimony to meet any issue tendered thereby. No application for continuance of the trial on the ground of surprise or inability to produce testimony is shown. If such had been made to appear, no doubt, the trial court would have granted the amendment upon such terms as would have fully protected any rights shown to be jeopardized by permitting the amendment at that time. We think reversible error is not shown in permitting the amended answer to be filed."

See, also, *Helbig v. Grays Harbor Elec. Co.*, 37 Wash. 130, 79 Pac. 612; *Smith v. Michigan Lumber Co.*, 43 Wash. 402, 86 Pac. 652.

Nor were the defenses inconsistent. "Defenses are inconsistent only when one fact contradicts the other; where there is only a seeming and logical inconsistency, which arises merely from a denial and a plea in confession and avoidance, such defenses are not inconsistent." *Irwin v. Holbrook*, 32 Wash. 349, 73 Pac. 360; *Davis v. Seattle Nat. Bank*, 19 Wash. 65, 52 Pac. 526; *Loveland v. Jenkins-Boys Co.*, 49 Wash. 369, 95 Pac. 490.

On the merits of the controversy, the court found that the respondents had returned to the appellants the several pay-

ments that had been made to their agent for them with interest, and,

"That said money so returned by the defendants was returned to them and paid over to them on or about the 4th day of March, 1907, in full satisfaction and settlement of all dealings theretofore had between the plaintiffs and defendants on account of said lot, and on account of the moneys paid by plaintiffs to defendants' agent as aforesaid, and that said sum of money was accepted by said plaintiffs in full settlement and liquidations of all transactions theretofore occurring between the parties hereto on account of said lot, and that at the time of said settlement, the said plaintiffs absolutely released and discharged said defendants from any claims or demands that said plaintiffs, or either of them, might or did have against the defendants on account of any transaction relating to said lot, and at the time of said payment to plaintiffs of the money theretofore paid, with interest, all contracts or agreements relating to said lot were by mutual consent and for a valuable consideration rescinded, cancelled and held for naught."

The appellants contend, however, that the settlement was induced by conspiracy and fraud on the part of Good and his agent, but in our opinion the evidence does not support this contention. Mrs. Bowers' testimony shows that they did no more than state to her their views of her rights under the contract of sale, and this at a time after differences had arisen between them, and while the parties were dealing at arm's length, and when she had reason to suspect their motives if they were other than honest. Under these circumstances, we think it too much to say that Mrs. Bowers was either misled by the respondents or coerced by them into doing something against her will.

It is urged also that Mrs. Bowers was without authority to make a settlement of the rights acquired by herself and her husband without her husband's express assent, because the interest acquired by her in the land was community property... But we think the husband is estopped from raising this question. In this state the management and control of

community property is vested in the husband, and the wife
cannot, without his consent, make any valid contract with
reference thereto, unless it be for necessaries for herself or
the family. When, therefore, the husband knowingly per-
mits the wife to deal with the community property, his con-
sent to her acts and all of her acts is implied, and he cannot
afterwards hold to those which redound to his benefit and
repudiate those which are against his interest. He must
accept the contract as an entirety, or repudiate it as an
entirety, and in this instance he will not be permitted to say
that his wife had authority to contract for the land, but did
not have authority to settle and relinquish any right acquired
thereunder. The judgment is affirmed.

ALL CONCUR.