[No. 26209. Department One. January 8, 1937.]

OMICRON COMPANY, INC., *Respondent*, v. J. H. LINGE et al., *Appellants*.[1]

*Harry J. Kuen,* for appellants.

*Patterson & Patterson,* for respondent.

GERAGHTY, J.—This appeal is from a decree reforming a deed.

The property involved is a plot of ground, irregular in boundary, at the northwest corner of First avenue north and Garden avenue, in the city of Renton. First avenue north runs northeasterly and southwesterly;

[1]Reported in 63 P. (2d) 527.

the course of Garden avenue is north and south. The property is described on the official plat as tracts 1 and 2 of block 6, re-plat of block 6, Sartorisville. Tract 2, the inside and westerly tract, is fifty feet in width and abuts on First avenue north. The tract runs northwesterly, and its side lines intersect the north line of this avenue at right angles. Tract 1, the corner and easterly tract, has a frontage of fifty feet on First avenue north and a depth of seventy-six feet along the west line of Garden avenue. The north boundary line of the two tracts runs due west, for a distance of one hundred ninety-nine feet from Garden avenue to the west line of tract 2. The west line of tract 2 has a depth of one hundred eighty-seven feet from First avenue north. This plot of ground was unimproved on June 25, 1929.

On that date, the defendants borrowed eleven thousand dollars from the Northern Savings and Loan Association for the purpose of building a one-story concrete garage, with gasoline pumps and accessories, on the plot, and secured the loan by executing a mortgage to the savings and loan association. The property mortgaged was described in the instrument as tract 1.

Prior to the time of making the loan, the defendants had plans and specifications for the building prepared by a firm of architects, and had also executed a lease of the property to be thus improved to a tenant for a period of five years. The plans for the building, introduced in evidence, embodied a sheet showing the outlines of the property to be improved. The site of the proposed building, as shown on this sheet, embraced both tracts as one plot, and without any lot or tract numbers.

The building, as thus planned and subsequently built, had a sixty-foot frontage on First avenue north and a

depth of one hundred twenty feet. It will thus be seen that the building covered not only tract 2 but the west ten feet of tract 1. The plans for the improvement also provided for gasoline pumps east of the building, with cement foundations and the usual canopy over the pumps. The front part of the building, facing First avenue, to a depth of thirty feet, was equipped for a salesroom for automobiles. The rear was to be used for repairs and garage purposes. The entrance to this rear part of the building was from the east, over that portion of tract 1 not built upon. The open part of tract 1 east of the building and extending to Garden avenue was graveled in the usual way for driveway and service station purposes.

We have seen that the mortgage to the savings and loan association covered only tract 1, while the larger part of the building was on tract 2. The money advanced upon the mortgage was employed in paying the contractor. After the completion of the building, the defendants defaulted in the payments stipulated in the mortgage and assigned the rents to the savings and loan association. Later, the tenant in the meantime having failed in business, the defendants gave the mortgagee a quitclaim deed. This deed, like the mortgage, describes only tract 1. The mortgagee paid the defendants a small consideration for the deed and, in addition, cancelled the note and mortgage. The present suit is brought to reform this deed by including tract 2.

The suit was brought by the Northern Savings and Loan Association, but, before the entry of the decree, the Omicron Company, Inc., succeeded to the rights of the loan association and was substituted as plaintiff. The complaint alleged the execution of the deed on December 2, 1932; that it was the intention of the parties that this deed should convey to the plaintiff not only

tract 1 but also tract 2, but that through oversight and mistake only tract 1 was included; that, at the time of the execution of the deed, the defendants gave the plaintiff possession of the two tracts; and that the plaintiff ever since has been in the possession of them.

The defendants admitted the execution of the deed, and, by way of an affirmative defense and cross-complaint, alleged that a mistake had been made in describing the tract intended to be mortgaged and thereafter conveyed; that it should have been described as tract 2 rather than tract 1. The defendants sought affirmative relief by requiring the plaintiff to execute to them conveyance of tract 1, in exchange for their deed conveying tract 2 to plaintiff.

In announcing its decision, the trial court said:

"Looking to the common sense of the thing, I believe it is obvious that anyone in the financial business, mortgage business, would never have advanced this money unless he honestly believed he had this whole property and that it was being covered by the mortgage. It is just as Mr. Calderhead said, it would be ridiculous. People do not do business that way. No one wants a mortgage on five-sixths of a building. In fact, his testimony has the ring of sincerity and truth to the court.

"Now the defendants insist that they would not have mortgaged both lots. It seems to me all the surrounding circumstances, the history of the property, the transaction, show or tend to corroborate the theory of the plaintiff rather than the theory of the defendants. They exercised none of the prerogatives of ownership after the collapse of the business enterprise of Mr. Lewis [the tenant] and its surrender to the mortgagee, over a considerable period of years. It is difficult for the court to believe that, if they actually owned it or had claimed it during this time that they would not have done something to assert ownership."

The court found as facts that, in the execution and delivery of the quitclaim deed by the defendants to the

savings and loan association, it was the intention of the defendants to convey, and of the Northern Savings and Loan Association to receive, tracts 1 and 2, but that, by oversight and mistake, the deed included only tract 1; that simultaneously with the execution and delivery of the deed, the defendants delivered possession of both tracts to the savings and loan association, and the association continued in possession thereof until the commencement of the action, when possession was transferred to the substituted plaintiff, the Omicron Company, Inc., which company has ever since been, and then was, in possession of both tracts as the owner thereof. A decree having been entered in conformity with the findings, the defendants appeal.

█ An examination of the record leaves no doubt of the correctness of the ruling of the court. It is evident that, from the beginning, the parties regarded the two tracts as one plot. The main structure, covering the full fifty-foot width of tract 2 and ten feet of tract 1, with the erection of gasoline pumps and other accessories, leads to no other conclusion. The construction contract and lease also assumed the property to be one plot. The appellants offered no satisfactory explanation of the transactions consistent with their contention. That the parties regarded tract 1 as embracing the whole of the plot is also evidenced by the fact that, since 1929, the taxes were allowed to go delinquent on tract 2.

It is true that, after discovering this fact shortly before the institution of the suit, the appellants paid the delinquent taxes on tract 2, amounting to $41.40, but this was done only after it was discovered by appellants that a mutual mistake had been made in the conveyance. The payment of these taxes by the appellants in no way supports their contention, because payment

was made on tract 2, which appellants contend should have been conveyed to the respondent.

As to these taxes, the decree provided that, since their payment inured to the benefit of the respondent, the taxable costs in the lower court, in the sum of $29.60, should be offset against the tax payment, and that the appellants should have judgment against the respondent for the difference, $11.80. The respondent consented to this condition.

The decree is affirmed.

HOLCOMB, MAIN, BLAKE, and STEINERT, JJ., concur.