[No. 27090.    Department Two.    June 16, 1938.]

RALPH E. WOODRUFF, *Appellant,* v. MARGARETHA A. COATE, *Respondent.*[1]

[1]Reported in 80 P. (2d) 555.

*Ward & Ward* and *John Wilkinson,* for appellant.
*McEwen & Brooks,* for respondent.

BEALS, J.—Christian Guler and his wife, both now deceased, were the parents of defendant, Margaretha A. Coate, and the owners of land in Klickitat county. Mrs. Guler died intestate, leaving defendant, who was the only child of her parents, as sole heir. Evidently, Mr. Guler assumed to manage the property, and in 1931, without defendant's knowledge, he leased to Mt. Adams Lumber Company, a corporation, a tract of land near or adjoining the company's mill. Ralph E. Woodruff, plaintiff in this action, and his wife are, and apparently always have been, the owners of most, if not all, of the capital stock of Mt. Adams Lumber Company, Mr. Woodruff acting as president of the corporation. Shortly after entering into the lease with Mr. Guler, the corporation took possession of the demised real estate, and placed lumber and supplies on the property.

Mr. Guler died in August, 1935, and in due time his estate was distributed to defendant, who then became the owner of the entire fee of the property covered by the lease. In the course of time, plaintiff and defendant signed the following writing:

"July 16, 1936.
"AGREEMENT ON GULER LAND SOUTHWEST FROM PEARSON STORE.

"1 acre lots approximately square suitable for building lots at $100 per acre from corner south.

"Also from corner west will be considered at same price per acre.

"Payment 25% cash balance divided over approximately 18 months or notes of W. H. Dean will be placed in escrow for warrantie deed also in escrow.

"(Signed) RALPH E. WOODRUFF
MARGARETHA A. COATE."

May 18, 1937, plaintiff filed his complaint in this action, alleging the ownership of certain real property

in defendant, and the signing of the writing above quoted. Plaintiff further alleged that the land covered by the agreement comprised a description which he set forth, and that, by the writing, plaintiff acquired the land from defendant, to be used in the operation of a box factory; that, relying upon the writing, plaintiff took possession of the land and made valuable improvements thereon, all without objection on the part of defendant; that plaintiff thereafter tendered to defendant twenty-five per cent of the purchase price of the land in cash, and offered to deliver to defendant the notes of W. H. Dean, or to pay the full purchase price of the land in money. Plaintiff further alleged his continued possession of the land, and that defendant agreed to perform her part of the contract. Plaintiff prayed for a decree requiring defendant to specifically perform the agreement, accept payment for the land, and convey the same to plaintiff. The prayer of the complaint also demanded general relief.

Defendant answered the complaint, admitting that she signed the writing referred to therein, denying that plaintiff was ever in possession of the property, and pleading affirmatively that plaintiff and Elva P. Woodruff were husband and wife and the owners of all the capital stock of Mt. Adams Lumber Company, a Washington corporation and the owner of a sawmill and box factory at Trout Lake, in Klickitat county, located on land adjoining the property described in plaintiff's complaint. The answer further pleaded that Mrs. Coate's father, the late Christian Guler, had leased the land to the corporation, which had taken possession thereof under the lease and had remained in possession until dispossessed during the month of May, 1937, under a writ of assistance issued out of the superior court in a certain action wherein defendant herein was plaintiff and Mt. Adams Lumber Company defendant; that the

lease from Mr. Guler to the corporation was terminated by a notice September 10, 1936, and that thereafter the unlawful detainer action referred to was instituted by Mrs. Coate to obtain possession of the property; that the corporation appeared in the action by plaintiff, Ralph E. Woodruff, its president, and filed its answer and cross-complaint, to which plaintiff replied; that, on the trial of the action, findings of fact, conclusions of law, and judgment were entered in favor of the defendant in this action (plaintiff in the prior cause); and that thereafter possession of the property was, under a writ of assistance, restored to the defendant in this proceeding. The defendant herein attached to her answer copies of the complaint, answer and cross-complaint, reply, findings of fact, conclusions of law, and judgment, in the prior action, relying upon that record as *res judicata.*

By his reply filed in this action, plaintiff denied most of the material allegations contained in defendant's answer, but did admit that Mt. Adams Lumber Company had appeared in the prior action and filed its answer and cross-complaint, as set forth in defendant's answer in this cause.

This action, being equitable in its nature, was tried to the court, and resulted in a decree in defendant's favor, dismissing the action with prejudice, from which decree plaintiff has appealed.

Manifestly, the writing dated July 16, 1936, signed by the parties to this action, is in itself insufficient to support an action for specific performance. It contains neither an agreement to sell nor an agreement to buy. From the writing itself it cannot be determined who is the owner of the property, or who the purchaser, or what property is to be conveyed. In this action, appellant seeks to enforce specific performance, contending that possession of certain property was de-

livered pursuant to the writing, and valuable improvements placed thereon by himself.

In the prior action between respondent and Mt. Adams Lumber Company, the corporation in its answer alleged, by way of a cross-complaint, the making of the writing of July 16th, and that the property

" . . . which he acquired by virtue of the above mentioned agreement is now used and has been used in connection with the operation of a box factory, owned by the defendant"

corporation, and that valuable improvements were made on the property by the corporation, which further alleged that it had been in continuous possession of the property, and had tendered to respondent herein the purchase price thereof.

Paragraph V of the cross-complaint in the prior action and the prayer thereof read as follows:

"Defendant further alleges that in signing the agreement with the plaintiff heretofore set forth, dated July 16, 1936, he was acting for the Mt. Adams Lumber Company, a corporation, of which he and his wife are the sole owners. That the defendant well knew this fact and understood that the said Ralph W. Woodruff was acting for the corporation and was acquiring this property for the use and benefit of the corporation, defendant above named.

"WHEREFORE, defendant having fully answered plaintiff's complaint, prays the court that the same may be dismissed and that the plaintiff take nothing on account thereof; and the defendant further prays the court, since his contract of purchase arose out of and was the consummation of a settlement of the lease agreement referred to in plaintiff's complaint, the defendant is entitled to a decree of this court compelling the plaintiff to specifically perform the contract of July 16, 1936, and accept the payment from the defendant according to the terms thereof, and a decree directing the plaintiff to execute her warranty deed for the property specified in said agreement and in case of her failure

so to do, that defendant is entitled to have a decree appointing a commissioner to execute said deed in accordance with the decree herein prayed for."

The answer and cross-complaint were signed by the corporation defendant, but by no attorney on its behalf, the answer having been verified by appellant herein, Ralph E. Woodruff, as president of the corporation.

It clearly appears, then, from the record in this action, that in the prior proceeding, in which the respondent herein sued for possession of the premises which appellant herein claims, the corporation above named, which is controlled by appellant and his wife, pleaded in its cross-complaint the very contract which appellant is now seeking to enforce, and sought specific performance thereof in favor of the corporation, and that this issue was determined adversely to the corporation by the judgment which was rendered in the action, from which no appeal was taken.

At the trial of the prior action, appellant, as president of the corporation defendant therein, appeared and testified.

In the case at bar, appellant testified that it was his understanding that he was a codefendant in the prior action, but that the tender which was pleaded by the corporation defendant in that action for the purpose of that suit was made by appellant in the name of the Mt. Adams Lumber Company. Appellant did not state the reason for his "understanding" that he was a codefendant in the action. Mt. Adams Lumber Company, a corporation, is named in all the pleadings as sole defendant, and was so designated in the answer and cross-complaint which appellant verified. It is true that, in the answer referred to, appellant sometimes used the pronoun *he*, apparently referring to himself as distinguished from the corporation. Of course, if appellant had been named as a party defendant in the prior action,

respondent's contention that the judgment therein rendered should be held *res judicata* of the pending controversy would be even stronger. It clearly appears, however, that appellant considered the interests of the Mt. Adams Lumber Company identical with the interests of his wife and himself, and the answer and cross-complaint which appellant verified alleges in detail that, in signing the writing above quoted, appellant was acting for the corporation, and was acquiring, for the use and benefit of the corporation, the property which was the subject matter of the agreement, and that respondent understood that such was the fact.

The judgment in the unlawful detainer action was signed March 30, 1937. April 14th following, the following order was signed in the cause:

"At the conclusion of plaintiff's case the defendant attempted to prove the cross-complaint alleged in his answer. A motion against the introduction of testimony was made, which the court treated as a demurrer. Arguments were had by respective counsel, at the conclusion of which the court ordered that the so-called motion or demurrer be sustained and that the defendant be not allowed to introduce proof under its cross-complaint."

No attempt was made to amend the findings of fact *nunc pro tunc,* or to correct or amplify the record in any way, unless the entry of the order quoted has that effect. It does not appear that the so-called order was entered on motion or otherwise than *ex parte,* nor does it appear at whose instance the court acted. It is difficult to understand how such an order can be considered for any purpose, if it be deemed material to any issue herein.

The findings of fact entered in the unlawful detainer action are full and complete, the court having found the corporate existence of the defendant, the ownership of the property by Mrs. Coate and her father after

the death of Mrs. Guler, the leasing of the property by Mr. Guler without his daughter's consent, the taking possession of the land under the lease by the corporation, the death of Mr. Guler and the distribution of his half interest in the property to his daughter, the giving of notice to the corporation by Mrs. Coate of the termination of the lease, the refusal to deliver possession of the property by the corporation, the service of the notice to vacate by handing to appellant herein, the president and general manager of the corporation, a copy of the notice, the refusal of the corporation to deliver possession of the property, and the reasonable value of the use of the property to the date of trial. The court concluded that the plaintiff was entitled to judgment awarding her possession of the property, for double damages, and for costs, and a judgment was entered to that effect. The findings and judgment both recite that the corporation appeared at the trial by its officers and agents and by its attorneys.

By the pleadings in the unlawful detainer action, the issue that the defendant therein was entitled to a conveyance of the property under the writing dated July 16th, was directly tendered, and the identity of the rights and claims of Mt. Adams Lumber Company, a corporation, and appellant and his wife, in connection with the property which was the subject matter of that action, was definitely asserted by the corporation and appellant on its behalf. The court found in favor of the plaintiff in that action (respondent here), and rendered judgment in her favor. The issue was definitely determined in respondent's favor.

The court entered no findings in the case at bar, the decree simply reciting that appellant failed to sustain the allegations of his complaint, and that respondent was entitled to a dismissal of the action with prejudice,

the decree proceeding to dismiss the action and award respondent her costs.

On this appeal, appellant contends that the trial court erred in holding that the judgment in the unlawful detainer action is *res judicata* in the case at bar; that the court erred in refusing to allow appellant to offer evidence tending to show that the corporation did not take possession of the land which appellant contends should be conveyed to him, but that, on the contrary, appellant took possession thereof July 16, 1936; and finally, that the court erred in refusing to decree specific performance in appellant's favor, and in dismissing the action.

On the trial of this action, appellant testified that he took the complaint in the prior action to an attorney in Vancouver, who prepared the answer and cross-complaint and mailed it to appellant, and that he thereupon served and filed the pleading. Appellant further testified that he delivered to the attorney, with the complaint, memoranda which he had prepared to enable his counsel to prepare the answer. He testified that he explained to the attorney that the stock in the corporation was owned by Mrs. Woodruff and himself and one Pearson, and that the latter "held his stock without consideration at all except that he was to work with me, being in the business." Appellant also testified that, prior to verifying the answer, he read the allegation therein contained, to the effect that, in signing the writing of July 16, 1936, he was acting for the corporation, of which he and his wife were sole owners, and was endeavoring to acquire title to the property for the sole benefit of the corporation. Appellant also admitted that he testified as a witness in the unlawful detainer case.

It is, of course, true that the interest of a stockholder in a corporation, of itself, is not such a direct interest that the stockholder would necessarily become

personally bound by a judgment in an action to which the corporation is a party, simply because he appeared and testified as a witness on behalf of the corporation. In the case at bar, however, appellant, the president of the corporation, directed the preparation of an answer and cross-complaint in which it is specifically alleged that, in signing the writing of July 16th, appellant was acting for and on behalf of the corporation. It is further alleged that the corporation had made a tender in an attempt to carry out what it contended were the terms of the writing. The corporation, which, of course, could act only through its officers under appellant's direction, sought by its pleading exactly what appellant seeks here, to-wit, specific performance of an alleged contract to convey land.

The record shows that the corporation had possession of the property which it claimed under the lease from Mr. Guler, made in 1931. There is much evidence as to the exact descriptions of the land occupied by the corporation and the land which appellant claims that he is entitled to purchase. The record, however, is so confused that it is difficult to follow appellant's contention, and the writing on which appellant bases his claim throws no light upon this phase of the case.

In Van Fleet's Former Adjudication, 2, § 1, is found the following:

"A cause of action is *res judicata*, or set at rest, as to adverse parties and their respective privies, if a judicial tribunal having jurisdiction has finally adjudicated upon the merits of the whole or of any part of the cause, either upon a default or after a contest. In such a case, another proceeding can not be maintained upon the cause, nor upon any part of it; nor can it be used as a counter-claim or set-off. A matter or question, either of law or fact, is *res judicata*, or set at rest, as to adverse parties and their respective privies, if it was a material issue in the proceeding, directly involved, and not merely incidentally cognizable nor col-

laterally in question, and was adjudicated, after a contest, by a final judgment on the merits. In such a case, it can not be again contested by the same parties or their respective privies, in any other judicial proceeding. In other words, as between adverse parties and their respective privies, a final judgment on the merits, upon any cause of action or defense, rendered either after or without a contest, merges the cause in or destroys or satisfies it by the relief granted, or determines that it has no existence by the relief refused. So far as that cause is concerned, nothing remains upon which to base any litigation. So, also, a final judgment on the merits determining any issue of law or fact, after a contest over it, forever sets it at rest, and fixes it as a fact or as the law in any other litigation between the parties or their respective privies."

The rule laid down in the *Duchess of Kingston's Case,* 20 Howell's State Trials 355, 538, that

" . . . the judgment of a court of concurrent jurisdiction, directly upon the point, is as a plea, a bar, or as evidence, conclusive, between the same parties, upon the same matter, directly in question in another court,"

has been very generally approved and followed.

In the case of *Douthitt v. MacCulsky,* 11 Wash. 601, 40 Pac. 186, it appeared that several actions for the foreclosure of mechanics' liens had been consolidated for trial, and a decree rendered in the consolidated cause, based upon a finding that the property belonged to the husband. The wife had been made a party to some of the lien foreclosures, knew of the pendency of the litigation, and had appeared and defended against the claims of the lienors. The ownership of the property was one of the questions submitted for judicial determination, and the court expressly found that the property belonged to the husband. It was held that, as the wife had actual knowledge of the proceedings, and was a party to the decree, from which no appeal

was taken, the decree became binding upon her as upon all other parties. This court observed, in the course of its opinion, that, while the wife was not a party to some of the foreclosure suits, yet she knew of their pendency and the object sought to be obtained therein. In connection with this phase of the case, this court said:

"The wife participated in the trial, at least as to some of the issues submitted for determination, and with full knowledge of the other issues and of their possible results, and with actual knowledge of what was decreed in the premises; she remained silent when she should have spoken, and cannot now be heard. It is contrary to the policy of the law to allow the same question to be separately litigated by every person interested in it. *Albert v. Hamilton*, 76 Md. 304 (25 Atl. 341).

"Admitting the general rule to be that no one can be conclusively bound by a judgment or decree unless he be a party to the suit or be in privity with the party, we think this rule does not require a person to become a technical party to the record in order to be bound and concluded by the result of the suit. If he be interested in the subject matter of the suit and exercise the right of participating in the defense, he cannot afterwards be heard to contend that he is not bound and concluded by the judgment and decree to the same extent that he would have been if made a technical party to the proceeding."

In the case of *Shoemake v. Finlayson*, 22 Wash. 12, 60 Pac. 50, this court held that one who was a witness in a prior action, in which a conveyance from himself was held fraudulent as to creditors, could not later maintain another action as owner of the property. It was held that the conveyance as between grantor and grantee was good, the court also saying:

"There is also another ground upon which the judgment must be reversed. The plaintiff in this action was a witness on the trial of the former action, and was fully acquainted with the character and object of that

action and the issues made therein. He was directly interested in the result, and in sustaining the title of his grantee, which was assailed therein, and, under such circumstances, he is estopped by the judgment as fully as if he had been a nominal party thereto."

In the case of *American Bonding Co. v. Loeb,* 47 Wash. 447, 92 Pac. 282, it was held that a resident of this state, who attended a trial in California, in the result of which he was vitally interested, and in which litigation he had an opportunity to intervene, was concluded by the judgment therein rendered.

The cases of *Curtis Studio v. Lennes,* 121 Wash. 32, 208 Pac. 79, and *Howard v. Mortensen,* 144 Wash. 661, 258 Pac. 853, are also in point. In the latter case, it was held that one owning an adverse claim to property levied upon, and interested in defeating an action to foreclose a lien thereon, although not a party to the proceeding, was bound by the judgment, he having testified on the trial on behalf of the defendants and personally aided them in defeating the lien sought to be established. In the course of the opinion, the court said:

"It seems to us, that Howard's interest in the success of Campbell and the sheriff in defeating Ellington's lien, and his manifest personal efforts in that behalf, render the judgment in Ellington's lien foreclosure action as much a binding adjudication that Ellington's lien is superior to Howard's claim of title as it is a binding adjudication that Ellington's lien is superior to Campbell's claim of title."

In the case at bar, appellant seeks, as an individual, to re-litigate the question which, as president of Mt. Adams Lumber Company, he made an issue in the corporation's cross-complaint in the unlawful detainer action. In that action, the corporation, under appellant's management and control, sought specific performance of the same alleged contract which appellant

here seeks personally to enforce. In the prior proceeding, it was determined that specific performance should not be decreed, and the judgment therein rendered is binding upon appellant in this proceeding. It is also true that appellant caused to be prepared and himself. verified in the unlawful detainer action a cross-complaint containing allegations utterly inconsistent with his complaint in this action.

The trial court, then, did not err in entering its decree dismissing this action, and the decree is accordingly affirmed.

STEINERT, C. J., MILLARD, BLAKE, and ROBINSON, JJ., concur.