[No. 31434. Department Two. March 22, 1951.]

J. M. BACON, *Individually and as Trustee, Respondent,* v.
RAYMOND L. GARDNER *et al., Appellants.*[1]

[1]Reported in 229 P. (2d) 523.

*Arthur H. Hutchinson* and *Richard Kent Stacer,* for appellants.

*J. Elwood Peterson, Lewis M. Dawson,* and *Max R. Nicolai,* for respondent.

HAMLEY, J.—The primary question framed by the pleadings is this: Which of two religious organizations was the owner of a certain parcel of Seattle real estate on July 29, 1947?

On that date, the city of Seattle began a condemnation proceeding involving that parcel. A condemnation award in the amount of $7,192.74 was thereafter entered, payable to the rightful owner of the property as of July 29, 1947. This sum was deposited with the county clerk of King county until such owner could be determined.

As the case reaches this court, there are only two parties contesting for these funds. One of them is the plaintiff, J. M. Bacon. She now foregoes any claim to the funds in her individual capacity, but asserts such claim as trustee for Christ's Temple Church, a religious association, herein referred to as "Christ's Temple." The other contesting party is the defendant Kyles African Methodist Episcopal Zion Church, a corporation, herein referred to as "Kyles Corporation." Both claims are dependent upon ownership on July 29, 1947, of the following described real property:

Lot One (1), Block Sixteen (16) Hill Tract Addition to the City of Seattle, Supplemental Plat, (volume 2 of Plats, page 51 of the King County Auditor's office) Seattle, King County, Washington, (being known as the church property at 1245 Main Street, Seattle, Washington).

Plaintiff's assertion of ownership, as developed in the amended complaint, is grounded upon a warranty deed, dated September 13, 1939, in which plaintiff is named grantee, and "Niles A.M.E. Zion Church, an association," herein referred to as "Niles Association," is named grantor. Plaintiff alleged that this was really the deed of Kyles Corporation, but that, through a mistake by the scrivener, the grantor was misnamed. Plaintiff asked that the deed be reformed to show Kyles Corporation as the grantor, and to correct an error in the description whereby the words "addition" and "supplemental plat" had been omitted. Plaintiff also asked that, as trustee, she be decreed to be the owner of the moneys on deposit with the county clerk.

Defendant denied the principal allegations of the amended

complaint. By way of affirmative defense and counterclaim, defendant alleged that the persons who signed the deed of September 13, 1939, did so without authority from Kyles Corporation, and that the transaction was fraudulent and resulted from a conspiracy between those who signed the deed, the plaintiff, and the scrivener. Defendant asserted ownership of the property, and asked that the funds on deposit be turned over to it.

Plaintiff replied, denying most of the allegations of the answer, and affirmatively alleging that Kyles Corporation was only one of several names used by the church organization which owned the property in question prior to execution and delivery of the deed; that Allen J. Buttler and W. Paterno, who signed the deed, were the duly constituted officers of this same organization operating under another name; that by reason of its acceptance of the benefits of the sale, defendant is estopped to deny the validity of the deed; that after execution and delivery of the deed, defendant ratified the action of those who acted on its behalf; and that plaintiff, in any event, acquired title by adverse possession under both the seven- and ten-year statutes of limitation.

The cause went to trial on the issues developed by these pleadings.

The decree thereafter entered by the trial court recites that the deed of September 13, 1939, was executed under a mutual mistake as to the name of the grantor, the name intended being Kyles African Methodist Episcopal Zion Church of Seattle, a corporation. It is also recited that there was a mutual mistake in the description contained in the deed, in that the words "addition" and "supplemental plat" were inadvertently omitted. The decree further recites that, for more than seven years prior to the commencement of the action, plaintiff has occupied the premises actually, openly, notoriously, under color of title and in good faith, and has paid all taxes legally assessed against the same, and that Kyles Corporation and the other defendants were thereby barred by the seven-year statute of limitations from having or claiming any interest in the real estate. The decree also

recites facts on the basis of which it is declared that the claim of Kyles Corporation is barred by the ten-year statute of limitations; that Kyles Corporation is estopped to deny the authority of Buttler and Paterno to execute and deliver the deed; that Kyles Corporation has been guilty of laches in asserting its claim; and that it has, by its acts and failure to act, ratified the action of Buttler and Paterno.

The decree accordingly provides for a reformation of the deed to show the correct description and to name Kyles Corporation as the grantor; declares plaintiff, as trustee for Christ's Temple, the owner of the deposited funds; and orders the clerk of the court to pay over to plaintiff, as trustee, or to her attorney of record, the $7,192.74 on deposit. Kyles Corporation has appealed.

Appellant assigns as error the overruling of appellant's demurrer to the amended complaint, made on the ground that respondent had no legal capacity to sue. The original complaint named J. M. Bacon as the sole plaintiff. The amended complaint, filed pursuant to an order of court previously obtained, joined J. M. Bacon "as Trustee for Christ's Temple Church, a religious association," as an additional party plaintiff. There is no allegation that J. M. Bacon or any other person had filed with the office of the county clerk a certificate of assumed name, as provided in Rem. Rev. Stat., § 9976 [P.P.C. § 768-21] *et seq.* Appellant therefore argues that, under the provisions of Rem. Rev. Stat., § 9980, Christ's Temple is not entitled to maintain this action.

Rem. Rev. Stat., § 9976, requires such a certificate to be filed by any person or persons who carry on, conduct, or transact "business" in this state under an assumed name. This statute is directed principally against concealed partnerships. *Bowman v. Harrison,* 59 Wash. 56, 109 Pac. 192; *Yarbrough v. Pugh,* 63 Wash. 140, 114 Pac. 918. Its purpose is to advise anyone extending credit to a business operating under an assumed name, as to who are the real persons conducting the business. *Union Trust Co. v. Quigley,* 145 Wash. 176, 259 Pac. 28. In view of these statutory objectives, the term "business," as used in the statute, refers to an occupa-

tion or employment engaged in for the purpose of a livelihood or profit.

█ Christ's Temple is not engaged in "business," as so defined. It is an unincorporated association devoted exclusively to the teaching and practice of religious beliefs. It has no profit motive, and carries on no commercial enterprise. While the purchase of the real estate in question is a "business" transaction, statutes of this character are not directed against isolated transactions, but against a continuing commercial activity. *Hoagland v. Segur,* 38 N.J.L. (9 Vroom) 230, 237; *Johnson v. Cass & Emerson,* 91 Vt. 103, 99 Atl. 633; *Pratt v. York,* 197 Ky. 846, 248 S. W. 492. It is likewise clear that the bringing of an action is not "carrying on, conducting or transacting business," within the meaning of this statute. *Singmaster v. Hall,* 98 Wash. 134, 167 Pac. 136.

The demurrer relating to respondent's capacity to sue was therefore properly overruled.

Appellant assigns as error the overruling of appellant's demurrer to the reply, made on the ground that the reply departs from the cause of action relied upon in the amended complaint, by pleading the seven- and ten-year statutes of limitation. The reply was served upon counsel for appellant, and filed, on August 1, 1949. Appellant filed no written demurrer, but presented its demurrer orally at the outset of trial on January 4, 1950. The trial court reserved ruling on the demurrer at that time, and overruled it later in the trial. On January 5, 1950, while the trial was in progress, respondent served and filed a written motion to amend the amended complaint for the purpose of adding allegations relative to the seven- and ten-year statutes of limitation. The motion was argued the next day, and granted by the court at the same time the demurrer was overruled.

Appellant does not specifically assign error as to the granting of this motion. However, the assignment of error relating to the overruling of the demurrer will be considered broad enough to challenge the court's action regarding the motion. Rule 6 (2), Rules of Pleading, Practice, and Procedure (34A Wn. (2d) 71), authorizes the trial court to per-

mit amendments of any pleading "at any stage of an action." The rule provides, however, that such leave shall be refused if it appear to the court that the purpose of the motion was to delay the action; or that the motion was occasioned by lack of diligence and will result in unduly delaying the action or embarrassing any other party; or that, for any other reason, the granting of the motion would be unjust.

 Great latitude is vested in the trial court with respect to the granting of leave to amend pleadings pursuant to rule 6, to the end that the real matter in dispute may be determined. *Walker v. Sieg*, 23 Wn. (2d) 552, 558, 161 P. (2d) 542. The mere fact that an amendment may introduce a new issue is not of itself sufficient ground for denying it. *In re Campbell*, 19 Wn. (2d) 300, 307, 142 P. (2d) 492. The true test, as stated in *Bowers v. Good*, 52 Wash. 384, 100 Pac. 848, is whether the opposing party is prepared to meet the new issue.

 We are not convinced, from anything said in appellant's brief, that the circumstances of this case bring it within the proviso to rule 6 (2), and that leave to amend the amended complaint was therefore improperly granted. Appellant had five months' notice prior to the trial that respondent intended to raise the statute of limitations as a defense to appellant's affirmative defense and counterclaim. Therefore, no embarrassment, surprise or delay was involved, and appellant cannot justifiably say that it was not prepared to meet the issue. The amendment of the amended complaint was therefore properly permitted. It is accordingly unnecessary for us to consider whether the allegations contained in the reply constituted an improper departure or variance from the amended complaint in its original form.

Several of appellant's assignments of error question that portion of the decree which reforms the deed of September 13, 1939, with respect to the named grantor and the description of the property. Appellant advances three contentions on this branch of the case, the first being that the allegation in the amended complaint, that the grantor was misnamed due to the inadvertence of the scrivener, does not state a

ground for reformation, since the allegation must be one of mutual mistake.

■ Deeds may be reformed for the purpose of correcting errors caused by mutual mistake of the parties. *Rosenbaum v. Evans,* 63 Wash. 506, 115 Pac. 1054; *Mohr v. Johnson,* 137 Wash. 391, 242 Pac. 385; *Miles v. Craig,* 147 Wash. 530, 266 Pac. 182; *Johnston v. Mortensen,* 155 Wash. 547, 285 Pac. 438; *Omicron Co. v. Linge,* 189 Wash. 157, 63 P. (2d) 527; *Peterson v. Paulson,* 24 Wn. (2d) 166, 163 P. (2d) 830. A complaint for reformation of a deed or other instrument sufficiently shows a mutual mistake where it alleges a mistake of the scrivener. *Rosenbaum v. Evans, supra; Silbon v. Pacific Brewing & Malting Co.,* 72 Wash. 13, 129 Pac. 581. The amended complaint in the instant case was therefore sufficient to raise the issue of reformation.

Appellant next contends that parol evidence should not have been admitted to vary the description or other terms of the deed.

■ The oral testimony was admitted in connection with respondent's prayer for equitable relief by way of reformation of the deed. There have been cited above a few of the many cases in which this court has held that deeds may be reformed to correct a mutual mistake. In all these cases and, in fact, in every case where reformation has been permitted, parol evidence has been received and considered. As this court said, in *Fay v. Best,* 137 Wash. 1, 6, 241 Pac. 354, involving the reformation of a deed:

"Appellants further contend that respondents seek to vary the written instruments by oral evidence. A written instrument for the purchase of land, where a mutual mistake has been made, cannot very well be varied by anything but oral evidence. All that is required is that it shall not be reformed for mistake except by evidence that is clear and convincing. *Erickson v. Poole,* 126 Wash. 130, 217 Pac. 715."

Finally, appellant argues that the reformation ordered by the court is not supported by clear, cogent and convincing evidence.

■ This being an action in equity, findings of fact were not required under the rules of court then in effect. The

decree, however, contains findings of fact on many points, including the question of mutual mistake in the preparation of the deed. It has been our uniform practice to consider such findings and accord them great weight in reviewing the sufficiency of the evidence to support decrees in equity. *Columbia Lbr. Co. v. Bush*, 13 Wn. (2d) 657, 126 P. (2d) 584; *Davis v. Altose*, 35 Wn. (2d) 807, 215 P. (2d) 705; *State ex rel. Bradford v. Stubblefield*, 36 Wn. (2d) 664, 220 P. (2d) 305.

■■■ The trial court specifically found that there had been a mutual mistake of the parties whereby the words "addition" and "supplemental plat" had been omitted from the legal description of the property. The record fully supports this finding, and there is no evidence whatever to the contrary. It is interesting to note that appellant itself made the identical mistake in 1931, in executing a mortgage on this property to Raymond L. Gardner.

The trial court further found that there had been a mutual mistake of the parties whereby the word "Niles" had been used in naming the grantor, instead of the word "Kyles." This finding is also fully supported by the record. The testimony is uncontradicted that there has never been a *"Niles* African Methodist Episcopal Zion Church" in Seattle.

The trial court also found that there had been a mutual mistake of the parties in that the grantor had been designated as "an association" instead of "a corporation." We will reserve discussion of this point for the moment, and proceed to the more fundamental questions as to what person or organization held title to the property immediately prior to the execution and delivery of the deed of September 13, 1939, and whether the persons who executed that deed were properly authorized.

The trial court made no specific findings of fact bearing on these questions, except as related to the matters of estoppel, laches and ratification. We have therefore carefully reviewed the evidence which was introduced regarding the rather involved organizational history of the church group which, under the name of Kyles Corporation, is the appel-

lant in this proceeding; and regarding the circumstances surrounding the execution and delivery of the deed dated September 13, 1939.

Several persons who would have been key witnesses had died prior to the trial, or were not then available. The books and records of Kyles Corporation prior to 1946 had disappeared, and the original real-estate contract on which respondent relies had likewise vanished. The oral testimony was in direct conflict on many points, and several witnesses were not consistent in their own testimony. The credibility of some witnesses was seriously challenged, and many witnesses found it difficult to recall details concerning transactions which occurred years ago. All of these factors combine to make it most difficult to now reconstruct, with any degree of assurance, the panorama of events with which we are concerned. It would unduly extend this opinion to discuss and appraise all of this evidence in detail. We accordingly set out below our findings as to the essential facts, after weighing the evidence and resolving the numerous conflicts in the testimony.

There has been, for many years, a church denomination known as the African Methodist Episcopal Zion Church of America. A branch or affiliate of this denomination was established in Seattle in 1921, or earlier, under the name Kyles African Methodist Episcopal Zion Church. This organization, in its original form, was an unincorporated association, and will be referred to herein as "Kyles Association." On December 31, 1921, this association, acting through several named trustees, entered into a contract to purchase the Main street property from the Christian and Missionary Alliance of Seattle, a religious corporation. The contract called for payments over a period of eight years, at which time a warranty deed would be executed and delivered to the grantee. There is nothing in the record to indicate that this transaction was ever consummated by the delivery of a deed to Kyles Association. However, no point was made on this score at the trial, and we will assume that Kyles Associa-

tion became the owner of the fee title pursuant to this contract.

Kyles Association conducted church services in the Main street church for a number of years. In 1929 the association desired to relocate in another part of the city, and so built a new church at 1716 Twenty-third avenue. When the members of Kyles Association moved to Twenty-third avenue, they decided to use the new name "Ebenezer African Methodist Episcopal Zion Church," herein referred to as "Ebenezer Association." Ever since 1930, when the Twenty-third avenue church was dedicated, church services there have been conducted in the name of Ebenezer Association, or in the name of Community M. E. Zion Church, a corporation formed by the members of Ebenezer Association in 1939. The Ebenezer name appears on the cornerstone of the Twenty-third avenue church.

After 1930, the Kyles *Association* name was not used for any purpose, except in connection with the transaction now under review. However, in July, 1931, the Kyles *Corporation* was organized by Reverend Henry L. Johnston, Marjorie Pitter and Sadye Dawson. Rev. Johnston had apparently been the head of Kyles Association immediately prior to its move to Twenty-third avenue, and was also the first pastor of the Ebenezer church. The corporation was organized for the purpose of obtaining a three-thousand-dollar loan on the Main street property, the mortgagee apparently insisting that the mortgage be executed by a corporate body. The mortgage securing this loan was executed by Kyles Corporation on October 20, 1931. The proceeds of the loan were used in connection with the construction of the Ebenezer church. At the time of incorporation, or sometime thereafter, the organizers of Kyles Corporation seemed to have reached the conclusion that the corporation held the title to the Main street property. However, the record does not show that either the Kyles Association or the Ebenezer Association ever purported to convey the Main street property to Kyles Corporation.

About this time, the exact date not being established in the record, respondent began her occupancy of the Main street church as a tenant of Kyles Association, Kyles Corporation, Ebenezer Association, or all three. Mrs. Bacon has been, since 1924, and now is, a regularly ordained and licensed preacher of the Pentecostal Assemblies of the World. In the late twenties she organized Christ's Temple, and it was on behalf of this church that Mrs. Bacon became a tenant of the Main street church. This church is still operating, and has a continuous membership. Regular church services were conducted by Christ's Temple at this location from the beginning of the tenancy until the property was taken by the city of Seattle in the condemnation proceedings.

Mrs. Bacon paid a monthly rental of ten dollars. These payments were usually made to Rev. Johnston. He served as pastor of the Ebenezer Association for several years, and it is not clear from the record whether he received these payments as pastor of Ebenezer or as president of Kyles Corporation. The minutes of a meeting of the board of trustees of Ebenezer Association, dated October 25, 1938, tend to indicate that at that time such rental payments were regarded as the property of Ebenezer Association.

Allen J. Buttler and Willard Paterno became president and treasurer, respectively, of Ebenezer Association in October, 1938. There is some testimony to the effect that they were illegally appointed to these posts. However, the minutes of the board meeting referred to above recite that they were elected by the board and that, at the same time, Mrs. M. Pitter was elected secretary. There is nothing in the record to indicate which officers of the association were authorized to execute contracts and deeds on behalf of Ebenezer Association.

In the fall of 1938, city authorities ordered Ebenezer Association to make certain improvements on the Twenty-third avenue church building. In order to raise money for this purpose, Rev. W. H. Alexander, then pastor of the Ebenezer church, and Buttler, went to Mrs. Bacon and offered to sell the association's equity in the Main street property to

her for five hundred dollars. When Mrs. Bacon indicated interest, Buttler called a meeting of the members of the Ebenezer Association, and later a meeting of the board of trustees of Ebenezer Association. There were, at this time, only four or five members in the association. The sale to Mrs. Bacon was approved at both of these meetings.

A real-estate contract was entered into on about November 10, 1938. The contract could not be found at the time of the trial, and there is no very satisfactory testimony as to the vendor named in the contract. There was testimony, however, that the contract was submitted to respondent by "some of the trustees of the Twenty-third avenue church." It was signed, on behalf of respondent, by Andrew Pascoe, H. P. Tilner, and Sister Ward. This contract provided for a purchase price of five hundred dollars, with two hundred fifty dollars to be paid at that time, and the balance in twelve monthly payments.

The initial two-hundred-fifty dollar payment was made to Rev. Alexander, and the remaining payments, except one, were made to Paterno. In May, 1939, a misunderstanding arose among the members of the Twenty-third avenue church. As a result, the pastor of that church and Bishop W. C. Brown, of Los Angeles, who had authority over this church, requested the payment that month to be made directly to Bishop Brown. This was done. The members of Christ's Temple periodically contributed funds to make these payments on the contract. Ebenezer Association used the funds received from this sale to make the required improvements in the Twenty-third avenue church.

The last payment on the contract, in the sum of $56.67, was made on September 13, 1939. Representatives of Christ's Temple on that day met with Buttler, Paterno and several others, representing Ebenezer Association, in the office of attorney Charles C. Hall. It was here that the deed of that date was prepared, executed and delivered to the representatives of Christ's Temple. The deed is signed by Allen J. Buttler and W. Paterno. The opening paragraph names the grantor as:

"Allen J. *Butler* & W. *Patorna,* as Chairman and *Secretary,* respectively, of the Board of Trustees of the Niles A.M.E. ZION CHURCH, an *association.*" (Italics ours.)

The acknowledgment is not in the corporate form provided in Rem. Rev. Stat., § 10567 [P.P.C. § 499-11], but is in the general form provided in Rem. Rev. Stat., § 10566 [P.P.C. § 499-9], except that there is added a recital to the effect that the signatories were the duly authorized agents and representatives of the named association, duly authorized and assigned to execute the deed for the association. The name of Buttler is spelled "Butler" in the acknowledgment, and the name of Paterno is spelled "Patorno."

Immediately after receiving this deed to the property, Christ's Temple undertook substantial repairs and improvements on the church building. Repairs were made in the foundation, painting was done, and the attic was remodeled to provide an apartment for the use of Mrs. Bacon as pastor. No rent was paid after September 28, 1938, and neither Kyles Corporation, Kyles Association, nor Ebenezer Association thereafter demanded payment of rent. The testimony indicates that as early as 1940 or 1941 some of the officers of Kyles Corporation, conferring among themselves, questioned the legality of the sale. However, nothing was ever done about it until the corporation appeared in this action.

We conclude from these facts that Kyles Corporation has never held any right, title or interest in the Main street property, and that the title to that property was, immediately prior to September 13, 1939, in the successor trustees of the unincorporated religious association originally known as Kyles Association and, in September, 1939, known as Ebenezer Association. We are further of the opinion that Buttler and Paterno were authorized by such trustees to execute and deliver the deed of that date, or, as found by the trial court, that such trustees and the association they represent are now estopped to deny their authority.

In reaching this conclusion, we have not overlooked the fact that neither this association nor its trustees were

made formal parties to this proceeding. However, the present minister and one member of the board of trustees, together with one or two other members of the association and the bishop having general jurisdiction over its affairs, were witnesses in this case. It must therefore be assumed that the membership of the association and its board of trustees had full knowledge of the pendency of this action and an opportunity to intervene in the litigation had they desired to do so. They chose not to do this, but nevertheless participated therein as witnesses. Under these circumstances, we believe the association and its board of trustees are estopped by the judgment as fully as if they had been nominal parties. See *Shoemake v. Finlayson,* 22 Wash. 12, 60 Pac. 50; *American Bonding Co. v Loeb,* 47 Wash. 447, 92 Pac. 282; *Howard v. Mortensen,* 144 Wash. 661, 258 Pac. 853; *Woodruff v. Coate,* 195 Wash. 201, 80 P. (2d) 555; *Briggs v. Madison,* 195 Wash. 612, 82 P. (2d) 113; and *Youngquist v. Thomas,* 196 Wash. 444, 83 P. (2d) 337.

Having found that respondent gained title to this property by virtue of a valid conveyance from the prior title holder, it is unnecessary for us to consider the applicability of the seven- or ten-year statute of limitations. We have considered several other assignments of error relating to the pleadings and other matters, but find them to be without merit.

In view of the conclusion we have reached, it is evident that there was no mutual mistake of the parties in denominating the grantor as an association rather than a corporation, and that it was unnecessary for the trial court to make such a finding and order of reformation in this particular in order to support the decree. In this respect, the decree should be modified to provide that the grantor named in the deed be changed to read "Kyles African Methodist Episcopal Zion Church, an association."

The decree is, in all other respects, affirmed.

ROBINSON, MALLERY, and GRADY, JJ., concur.

April 28, 1951. Petition for rehearing denied.