[No. 29054. Department One. October 27, 1943.]

*In the Matter of the Revocation of the License of* JOHN C. CAMPBELL *to Practice Dentistry.*[1]

[1]Reported in 142 P. (2d) 492.

*Griffin & Gershon,* for appellant.

*The Attorney General* and *Simon Wampold, Jr., Assistant,* for respondent.

*Riddell & Riddell, amici curiae.*

STEINERT, J.—Pursuant to the provisions of Rem. Rev. Stat., § 10861 [P. C. § 4-103], a complaint was filed with the director of licenses of the state of Washington, charging Dr. John C. Campbell with certain violations of the law relating to the practice of dentistry and seeking to revoke his certificate and license to practice that profession in this state. A hearing on the charges was scheduled to be held before a statutory trial committee. At the opening of the hearing, an amended complaint was filed enlarging and more specifically defining the charges. The hearing then proceeded, and upon the completion of the evidence, the matter was taken under advisement. Thereafter, the trial committee made its findings and conclusions, based upon which the director of licenses signed and entered an order revoking the certificate and license. Dr. Campbell thereupon appealed to the superior court for Thurston county, and in due time the court heard the matter *de novo,* upon

the record made before the trial committee. At the close of the hearing, the court made findings and conclusions approving and adopting those previously made by the committee, and thereupon entered judgment dismissing the appeal from the departmental decision and affirming the order revoking the doctor's license to practice dentistry in this state. Deeming himself aggrieved by the judgment of the superior court, Dr. Campbell appealed to this court. His appeal is resisted by the state.

The facts are not disputed and, for the most part, are stipulated by counsel. On November 9, 1916, the appellant herein, John C. Campbell, made application to the state board of dental examiners for permission to take the examination required of an applicant in order to practice dentistry in this state. He successfully passed the examination and received a license from the board.

Sometime in 1934, appellant for the first time opened a dental office in the city of Seattle. At that time he was, and now is, a resident of the state of California. The Seattle office is one of a chain of twelve or more of such dental offices, the main office being in the city of San Francisco, and all the other offices, with the exception of the one in Seattle, being located in various cities throughout the state of California. At the Seattle office licensed dentists, resident in this state, are employed. Appellant visits his Seattle office only occasionally, usually about once in every two months, and only upon such occasions does he perform dental work in this state. Apart from such occasional visits, appellant has not been personally present in the Seattle office.

On or about October 1, 1941, appellant paid to the department of licenses of Washington the required annual renewal fee, permitting him to continue the practice of dentistry in this state until September 30, 1942.

In connection with the operation and conduct of the Seattle office, appellant has for an extended period of time prior to the filing of the amended complaint herein, inserted various advertisements in the daily press. These

advertisements constitute the basis of the principal charge alleged in the amended complaint and will be referred to in more detail a little later herein.

The original complaint, dated February 9, 1942, comprised the following charges against the appellant: (1) that on November 9, 1916, while he was residing in Salem, Oregon, appellant obtained his original license to practice dentistry in this state, upon the representation that he intended to remove to the state of Washington and there personally to enter upon the practice of that profession, but that at no time since the issuance of the license has he resided in the state of Washington; (2) that appellant failed to file the license so obtained for record in the office of the proper county auditor, as required by law; and (3) that appellant, to whom the original license was issued under his true name of John C. Campbell, has been operating and advertising the dental office in Seattle under the name of "J. C. Campbell," with a resident licensed dentist in charge thereof as manager, and that, in violation of the Laws of 1937, chapter 45, p. 125, § 1 (Rem. Rev. Stat. (Sup.), § 10031-18 [P. C. § 1931-48]), he has not been personally present in the office during a majority of the time, or at all, while the office was in operation. The original complaint and a citation attached thereto were served by a deputy sheriff of San Francisco upon the appellant personally in that city on February 18, 1942.

On April 29, 1942, at the opening of the hearing before the trial committee, an amended complaint was served upon appellant's counsel. The amended complaint, as further amended by stipulation and proof, eliminated the charge contained in the original complaint with reference to appellant's obtaining the initial license upon the representation that he intended personally to practice dentistry in the state of Washington, and also eliminated the charge with reference to his failure to file his license for record. The specific charges contained in the amended pleading were (1) that appellant, having obtained a license in 1916, and having opened a dental office in Seattle in 1934, em-

ploying therein resident licensed dentists, had at no time since the latter date permanently resided in the state of Washington, nor had at any time, in that office, personally performed any of the dental services customarily rendered therein as part of the practice of dentistry; and (2) that appellant, while conducting his Seattle office, had used false and misleading advertising, as hereinafter more fully detailed, the tendency of which was to deceive the public into believing that appellant was personally doing the things necessary to be done as part of the practice of dentistry in that office, when in truth and in fact he was not personally present in the office nor doing any of the things which the public was led to believe he was personally performing.

At none of the proceedings before either the trial committee or the superior court was appellant present in person, but appeared only through his attorney.

Under his first assignment of error appellant contends that since the amended complaint was not served upon him *personally,* the trial committee did not acquire jurisdiction to hear and determine the charges contained therein.

Rem. Rev. Stat. (Sup.), § 10031-9 [P. C. § 1931-39], upon which appellant relies, provides that in all proceedings for the revocation or suspension of a license to practice dentistry, the holder of such license shall be given twenty days' notice in writing by the director of licenses, specifying the offense, or offenses, with which the accused person is charged, and also specifying the day when and the place where the hearing upon the charges is to be held.

The service of the original complaint, together with the citation to appear, complied fully with the provisions of the statute, and the appellant does not now contend otherwise. His contention is limited solely to an attack upon the amended complaint and the service thereof. It may be conceded, for the purposes of this case, that the amendatory pleading contained a material charge different from any contained in the original complaint.

It appears from the record that immediately upon the beginning of the hearing before the trial committee, the assistant attorney general representing the state of Washington stated to the committee that he and Mr. John C. Stevenson, then but not now representing the appellant, after many conversations with each other had agreed to confine the issues to a single question as then formulated by the state's counsel. Contemporaneously with the making of that statement, the assistant attorney general presented the amended complaint and asked that it be filed, to which no objection was made by Mr. Stevenson. Counsel for the respective parties then proceeded to stipulate with reference to the contents of one of the paragraphs of the amended pleading. Having stipulated to that extent, Mr. Stevenson then stated:

"Let me say for the purposes of the record that we are preserving all objections to the sufficiency of the complaint first and second to the deficiency of service of the complaint. Aside from that we are willing to stipulate as to certain facts in connection with the case."

It will be noted that the objection did not refer to the amended complaint but simply to the *complaint,* and, further, that there was no specific claim made that the amended complaint should have been served upon the appellant personally or that twenty days must elapse before the hearing could be had.

Counsel for the respective parties then made a further series of stipulations, covering twenty pages of the typewritten record and having reference to various matters in connection with the amended complaint and with the evidence pertaining to the case.

At that juncture, Mr. Riddell, who had been granted permission to appear as *amicus curiae,* raised a question with reference to Mr. Stevenson's prior objection "to the deficiency of service of the complaint," and specifically asked whether Mr. Stevenson was objecting because of the requirement of twenty days' notice. In answer to that question, Mr. Stevenson said:

"I am reserving all legal objections to the plaintiff's [department of licenses'] manner of service and all that."

Nothing further transpired with reference to the objection.

In our opinion, there are three valid reasons why appellant should not be heard to object to the jurisdiction of the trial committee to hear and determine the charges contained in the amended complaint. First, from what has been stated above, it appears that appellant, having theretofore been duly served with the original complaint, submitted himself to the jurisdiction of the committee by entering upon the hearing without promptly raising any objection with reference to the service of the amendatory pleading. Not only did his counsel, whose authority is not questioned, without objection permit the hearing to open and proceed upon the narrowed issue as stated to the committee by the assistant attorney general, but he also definitely stipulated with reference to a portion of the amended complaint before making any objection whatever to the character of the service thereof. The objection subsequently made therefore came too late. Second, the objection, when made later, was inadequately and but perfunctorily raised. It referred specifically only to the complaint, not to the amended complaint, and, furthermore, it failed to state any specific ground upon which it should be sustained. It is also apparent that Mr. Stevenson was ready to proceed with the hearing upon the agreed issue and that a postponement of the hearing until personal service upon the appellant in California could be obtained would have accomplished nothing of material benefit to him. Third, if, as appellant's argument seems to imply, this proceeding is a purely judicial one, rather than an administrative or, as sometimes expressed, a "quasi-judicial," proceeding, still the amendment was legally proper and the immediate hearing thereon justifiable and right, under the circumstances existing at the time. It is to be remembered that jurisdiction of the person of appellant already had been obtained by personal service of the original complaint and citation.

Rule VI, Rules of Pleading, Procedure and Practice. (193

Wash. 42-a), now appearing as Rem. Rev. Stat. (Sup.), § 308-6 [P. C. § 8676-9], provides:

"2. The court, upon motion, at any stage of an action, may order or give leave to either party to alter or amend any pleading, . . . to the end that the real matter in dispute, and all matters in the action in dispute, between the parties may be completely determined as far as possible in a single proceeding. But the order or leave shall be refused if it appears to the court (a) that the motion was made with intent to delay the action, or (b) that the motion was occasioned by lack of diligence on the part of the moving party and the granting of the motion would unduly delay the action or embarrass any other party, or (c) that, for any other reason, the granting of the motion would be unjust. . . .

"8. Any amendment may be ordered to be made in a summary manner at the trial if the adverse party will not thereby be prejudiced in the conduct of his case."

 It is demonstrably certain that the purpose of the state in presenting and filing the amended complaint when it did was not to delay the action; that the occasion for presenting and filing the amendatory pleading was not brought about by any lack of diligence on the part of the state; and that its presentment at the time of the hearing did not unduly delay the proceeding nor cause the appellant any embarrassment or prejudice. On the contrary, the hearing upon the agreed and controlling issues expedited the real matter in dispute, and the appellant not only had, but also availed himself of, the full opportunity to meet the issues thus presented.

 The mere fact that an amendment to a pleading may introduce a new issue is not of itself sufficient ground for denying it. As stated in *Bowers v. Good*, 52 Wash. 384, 100 Pac. 848,

"The true test is found in the answer to the question, is the opposing party prepared to meet the new issue. His remedy, therefore, when a new issue is sought to be presented by an amendment, is not to object to it merely, but to show in addition that he is unprepared to meet the new issue. In such case, the trial court will, in its discretion,

either continue the case in order to allow him to prepare for trial of the new issue, or deny the right to amend."

To the same effect are *O'Malley & Co. v. Lewis*, 176 Wash. 194, 28 P. (2d) 283, and the cases therein cited.

In the case at bar, the appellant did not ask for a continuance, nor did he assert or make any showing that he was unprepared to proceed by reason of the introduction of a new issue. For each and all of the reasons heretofore given, we consider appellant's first assignment of error to be without merit.

Appellant's second assignment is that the court erred in entering a decree canceling appellant's license. This assignment presents the crucial question in the case.

Aside from the stipulations between counsel for the respective parties, the evidence upon the hearing before the trial committee consisted entirely of a series of advertisements which the appellant periodically had inserted in various newspapers published in the city of Seattle, and which the state contends deceived or tended to deceive the public.

These advertisements were about fourteen inches in length and two columns wide, and carried much reading matter in both large and small type. In prominent position therein appeared the picture of the appellant. Immediately above the picture were the words "Dr. Campbell says," and to the side of it was a circular diagram containing the exordium:

"*I prefer that you use my* No MONEY DOWN *Plan instead of paying cash.*" [The words which we have italicized were in long-hand style, and the remainder were in heavy black type.]

The diagram was so arranged, with reference to the picture, as to make it appear that the words therein were being uttered by the appellant. At the bottom of the advertisement was the announcement "Dr. J. C. Campbell, Dentist, 1520 Westlake."

Withholding further reference to these advertisements for the moment, we turn our attention to certain provisions of the dental act, contained in Rem. Rev. Stat.

(Sup.), §§ 10031-1 to 10031-30, inclusive [P. C. §§ 1931-31 to 1931-60].

Rem. Rev. Stat. (Sup.), § 10031-6 [P. C. § 1931-36], defining the practice of dentistry, includes among the persons characterized as being engaged in such practice (a) one who represents himself as being able, or offers, to diagnose, treat, operate upon, or prescribe for any disease or physical condition of human teeth; (b) *one who owns, maintains, or operates an office for the practice of dentistry;* and (c) one who engages in any of the practices included in the curricula of recognized and approved dental schools and colleges.

Rem. Rev. Stat. (Sup.), § 10031-8 [P. C. § 1931-38], provides, in part, as follows:

"The director may refuse to issue the license provided for in this act, and any license now in force or that shall be hereafter given may be revoked or suspended, if issued to an individual who has, by false or fraudulent representations, obtained or sought to obtain practice."

Rem. Rev. Stat. (Sup.), § 10031-20 [P. C. § 1931-50], upon which this proceeding is primarily predicated, reads in part as follows:

"It shall be unlawful for any person, firm or corporation to publish, directly or indirectly, or circulate any fraudulent, false or misleading statements within the State of Washington as to the skill or method of practice of any person or operator; *or in any way to advertise in print any matter with a view of deceiving the public, or in any way that will tend to deceive or defraud the public.*" (Italics ours.)

The question presented by appellant's second assignment of error is whether the advertisements sponsored by him are within the prohibition of Rem. Rev. Stat. (Sup.), § 10031-20, as being matter printed with the view of deceiving the public, or *in any way tending to deceive the public,* thereby subjecting him to the penalty of having his license revoked, as provided by Rem. Rev. Stat. (Sup.), § 10031-8.

Appellant's purpose in inserting the advertisements in the public press was, of course, to attract the attention of the public and thereby solicit its patronage; otherwise, it would have been a useless and needless expense. It will be observed, from what we have quoted above from those insertions, that the advertisements are highly personalized. First, there is the picture of the appellant. Then, the individual thus pictured is represented as speaking personally and directly to the reader: "*I* prefer that *you* use *my* . . . plan instead of paying cash." (Italics ours.) Then, at the conclusion of the advertisement, is the name of the individual who has thus spoken, "Dr. J. C. Campbell, Dentist [singular]." The advertisement, taken as a whole, conveys the idea that appellant is an independent practitioner, not only owning the dental office but actually and personally conducting or immediately supervising its entire operations. There is no mention or indication of the fact that the office is but one of twelve or more similar offices, all except this particular one being in the state of California and requiring a corresponding amount of appellant's time and attention. There is no suggestion that the Seattle office constitutes a clinic, a company, or an association of dentists. For aught that appears in the advertisements, the office is operated and conducted personally by a single dentist. The reader of the advertisement is induced or invited to believe that, if he responds thereto, he will receive appellant's personal attention. At least it can be said that such advertisements "will tend to deceive or defraud the public" in that respect.

As stated in *Campbell v. State,* 12 Wn. (2d) 459, 122 P. (2d) 458, wherein was involved the right of the appellant herein to open and conduct a dental office in the city of Tacoma, under his general system of operation:

"The relationship between dentist and patient is inherently personal in the highest degree. Certainly it is within the province of the legislature to protect the public against all forms of fraud and deception tending to conceal the professional identity of the dentist who is, in fact, rendering the service in the particular office frequented by one

in need of dental assistance. By the practice denounced by the act [Rem. Rev. Stat. (Sup.), § 10031-18], the public may be unwittingly deprived of a personal relationship which may rightfully be expected, and another personality substituted therefor. The use of the name of a certain dentist as conducting an office for the practice of dentistry should mean something more than merely physical ownership of the office, or the right to use the name, which may have a value because of long continued use or commercial advertising."

The trial committee found and concluded that these advertisements had a tendency to deceive the public. The superior court upon a rehearing made a similar finding and came to the same conclusion. We are constrained by our own consideration of the matter to accept those findings and conclusions as correct.

Appellant contends that the charges against him have no foundation in fact, because there is no evidence that anyone was actually deceived by the advertisements. Manifestly, it would have been practically impossible for the state to ascertain and interview the many persons who may have visited appellant's office in response to his newspaper advertising. It was not incumbent upon the state to produce such evidence. *State Board of Medical Examiners v. Jordan,* 92 Wash. 234, 242, 158 Pac. 982, 986. In any event, the advertisements speak for themselves and reveal their own peculiar tendency to deceive the public in the respect referred to above.

Finally, appellant contends that the statute is unconstitutional because of its ambiguity, vagueness, and uncertainty. In support of that contention, he cites *Ex Parte Craycroft,* 24 Ohio N. P. (N.S.) 513; *Green v. Blanchard,* 138 Ark. 137, 211 S. W. 375, 5 A. L. R. 84; and *Chenoweth v. State Board of Medical Examiners,* 57 Colo. 74, 141 Pac. 132, Ann. Cas. 1915D, 1188, 51 L. R. A. (N.S.) 958.

In the *Craycroft* case, the common pleas court of Hamilton county, Ohio, declared certain provisions of the dental code of that state to be unconstitutional. We are not ad-

vised that there was ever an appeal to the supreme court of Ohio in that case. Subsequent to that decision, however, the common pleas court of Cuyahoga county, Ohio, a court of concurrent jurisdiction with the Hamilton county court, in *Taylor v. New System Prosthetic Dental Laboratory, Inc.,* 29 Ohio N. P. (N.S.) 451, expressly refused to follow the earlier decision. Consequently, the *Craycroft* case cannot be accepted as being the law of the state of Ohio.

The *Green* case, *supra,* did hold, by a three to two decision, that a dental statute similar to our own was too indefinite to be enforced. The opinion in that case was severely criticized, however, by the chief justice of that court as being untenable and contrary to the great weight of judicial authority.

The *Chenoweth* case, *supra,* in a four to three decision, likewise declared a statute relative to advertising to be unconstitutional because of its indefiniteness. However, in *Laughney v. Maybury,* 145 Wash. 146, 259 Pac. 17, 54 A. L. R. 393, this court, after discussing that case, expressly declined to follow the majority opinion therein.

Whatever may be the weight of those authorities upon this question, we need go no further than consult our own decisions in order to uphold the constitutionality of the statute under consideration. In *State Board of Medical Examiners v. Jordan,* 92 Wash. 234, 158 Pac. 982, this court dealt with a statute which made unprofessional conduct a ground for revoking a license to practice medicine and which, in defining such misconduct, included the following:

"Third. All advertising of medical business which is *intended or has a tendency to deceive the public* or impose upon credulous or ignorant persons, and so be harmful or injurious to public morals or safety." (Italics ours.) Rem. & Bal. Code, § 8397½.

It was contended there, as it is here, that the statute was uncertain, furnishing no standard by which the propriety or impropriety of questioned conduct could be measured. Answering that contention, and upholding the constitutionality of the statute, this court said:

"The one [provision of the statute quoted above] relating to advertisement cannot well be made more specific. To describe in express terms a faulty advertisement is practically to instruct the defendant how to evade it, and as to the limitless variations of language, symbols, and verbal or pictorial allurements, no human ingenuity could possibly anticipate and forestall them."

Again, in *State Board of Medical Examiners v. Macy*, 92 Wash. 614, 159 Pac. 801, the same statute was involved and the same attack was made upon it. After reviewing many authorities, this court concluded that the statute "is not void or unconstitutional for vagueness or uncertainty."

There are no decisions to the contrary in this jurisdiction, and upon the authority of the two cases last cited we are constrained to hold that the statute under consideration is not unconstitutional because of ambiguity, vagueness, or uncertainty.

Other questions are presented by the state in its brief, but in view of our conclusion already stated, those questions need not be discussed or determined.

The judgment of the superior court is affirmed.

SIMPSON, C. J., ROBINSON, JEFFERS, and GRADY, JJ., concur.